(No. 87585.—

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant, v. MICHAEL SAVICKAS *et al.*, Appellees.

*Opinion filed September 28, 2000.—Rehearing denied November 27, 2000.*

Kiesler & Berman, of Chicago (Robert L. Kiesler, John J. Piegore, Shannon F. O'Shea and Donald E. Elder, of counsel), for appellant.

William E. Reynolds, of Chicago (Timothy Quinn, of counsel), for appellee Michael Savickas.

Jerry A. Latherow, of Chicago (Charles A. Porretta, of counsel), for appellee Elizabeth Vinicky.

JUSTICE FREEMAN delivered the opinion of the court:

Michael Savickas stands convicted of the first degree murder (720 ILCS 5/9—1(a)(1), (a)(2) (West 1992)) of Thomas S. Vinicky (Thomas). Elizabeth Vinicky, the administrator of Thomas's estate (Elizabeth), has sued Savickas for wrongful death and survival. Savickas tendered the defense of his suit to his insurer, American Family Mutual Insurance Company (American Family). American Family filed the instant declaratory judgment action to determine whether it must defend or indemnify Savickas. American Family contends that it should be excused from doing so because the policy did not apply to bodily injury "expected or intended by any insured." The circuit court of Cook County granted American Family summary judgment. Savickas and Elizabeth appealed, and the appellate court reversed, with one justice dissenting. 304 Ill. App. 3d 614. We granted leave to appeal (177 Ill. 2d R. 315(a)), and now reverse.

## BACKGROUND

Savickas shot and killed Thomas outside the New Gold Coast Inn in March 1988. Elizabeth brought suit against Savickas in her capacity as the administrator of Thomas' estate, eventually filing the amended four-count complaint upon which American Family was granted summary judgment. Count I of the amended complaint, captioned "Intentional Tort/Murder/Wrongful Death," brought a claim under the Wrongful Death Act (Ill. Rev. Stat. 1987, ch. 70, par. 1 *et seq.*) for Thomas' children's loss of affection. Count II, captioned "Intentional Tort/

Murder Survival Action," sought damages for Thomas' pain and suffering prior to his death. Count III, captioned "Negligence/Wrongful Death," was, like count I, a claim under the Wrongful Death Act. However, this count alleged that Savickas had been negligent in shooting Thomas, in that he either negligently shot him, "negligently assessed a need for self defense" when he shot him, or both. Count IV, captioned "Negligence/Survival Action," sought damages for Thomas' pain and suffering prior to his death and contended that Savickas had been negligent in the same manner alleged in count III..

Savickas tendered his defense to his homeowner's insurer, American Family. American Family paid for Savickas' defense. However, American Family also filed the instant declaratory judgment action against Savickas and Elizabeth, seeking a determination that Savickas' acts were excluded from coverage and that as a result American Family owed him neither the duty to indemnify nor the duty to defend. Relying on language in its policy, American Family moved for summary judgment in the declaratory judgment action. The policy provides in relevant part that American Family would

> "pay, up to our limit, all sums for which any insured is legally liable because of bodily injury or property damage caused by an occurrence covered by this policy. We will defend any suit, even if the suit is groundless, false or fraudulent provided the suit resulted from bodily injury or property damage not excluded under this coverage." (Emphasis omitted.)

An "Exclusions" portion of the policy provided in part that the above coverage should not apply to bodily injury or property damage "which is expected or intended by any insured." American Family provided the court with a certified copy of Savickas' April 1990 conviction and a copy of the appellate court opinion affirming that conviction (*People v. Savickas*, 230 Ill. App. 3d 322 (1992)). American Family also attached excerpts from the tran-

script of Savickas' testimony at his criminal trial. In those excerpts Savickas admitted that the gun did not go off accidentally. He testified to the effect that he intentionally pointed the gun at the decedent and intentionally pulled the trigger while the gun was so aimed.

The trial court denied American Family's motion in October 1994. Subsequently, in April 1995, the court dismissed the declaratory judgment action with leave to reinstate after final resolution of Savickas' post-conviction petition, which was then still pending. The court reinstated the case on American Family's motion in August 1996 after the dismissal of Savickas' post-conviction petition was affirmed on appeal.

In November 1996 the trial court reconsidered its earlier ruling and granted summary judgment to American Family. The court held that based on Savickas' conviction and the testimony he gave at his criminal trial, there was conclusive proof that Savickas had expected to cause harm. The court explicitly ruled only that Savickas had "expected" the harm, not that he had "intended" it. The court stated that this ruling would have no impact on the underlying case.

Savickas and Elizabeth appealed, and the appellate court reversed. 304 Ill. App. 3d 614. The appellate court held that an insurer's duty to defend is determined solely according to the allegations of the complaint in the underlying case. Since the negligence allegations in the complaint were potentially covered by the policy, the insurer had the duty to defend. The appellate court held that it was precluded from according estoppel effect to Savickas' criminal conviction by this court's decision in *Thornton v. Paul*, 74 Ill. 2d 132 (1978). This appeal followed.

## ANALYSIS

Here, American Family presents several alternative arguments for affirming the trial court's grant of sum-

mary judgment. In one way or another, all of the arguments are based on Savickas' criminal conviction. Because we find that it is proper in this case to accord estoppel effect to the criminal conviction, we need not consider the other arguments raised by appellant.

## I. Contract Construction

Initially, we note that the parties do not allege any circumstance obligating the insurer to defend the insured other than the contract between them. Accordingly, the threshold issue is one of contract construction. The construction of an unambiguous insurance policy provision is a question of law, and the policy's terms are to be applied as written unless those terms contravene public policy. *Roberts v. Northland Insurance Co.*, 185 Ill. 2d 262 (1998). The pertinent language in the contract in this case is relatively straightforward. American Family contracted to "defend any suit, even if the suit is groundless, false or fraudulent provided the suit resulted from bodily injury or property damage not excluded under this coverage." Excluded from coverage was bodily injury or property damage "which is expected or intended by any insured." Thus, according to the relevant terms of the contract, American Family is obligated to defend Savickas, its insured, from any suit except suits for bodily injury or property damage which he expected or intended. The parties call to our attention no public policy concern which might militate against applying this language as written.

## II. Estoppel by Prior Criminal Conviction

American Family contends that it should not be required to defend or indemnify Savickas because his criminal prosecution conclusively established that he intended the injury. American Family recognizes that this argument is contrary to this court's decision in *Thornton v. Paul*, 74 Ill. 2d 132 (1978), but urges never-

theless that Savickas should be estopped, especially considering the fact that he was convicted of first degree murder.

*Thornton* was an appeal from a garnishment action by a judgment creditor against an insurer. The creditor obtained a default judgment on a negligence theory against the insured, then attempted to collect the judgment from the insurer. There, as here, the insurer contended that its insured's criminal conviction should be held to conclusively establish that the acts in question fell within a policy exclusion. We declined to find a criminal conviction constituted conclusive proof of the facts upon which it was based. Rather, we held a conviction constituted only *prima facie* evidence, which would "preserve[ ] the opportunity to rebut the factual basis of the conviction insofar as those facts are applicable to the civil proceeding." *Thornton*, 74 Ill. 2d at 151. For the reasons stated below, we overrule this portion of *Thornton*.

In *Thornton* we stated that the "majority of courts which permit the use of criminal convictions as evidence in civil cases appear to hold *** that the criminal conviction is *prima facie* evidence of the facts. (See Annot., 18 A.L.R.2d 1287, 1301 (1951).)" *Thornton*, 74 Ill. 2d at 149. This observation no longer holds true. As the Arkansas Supreme Court recently observed, "today in the vast majority of jurisdictions *** a criminal conviction now acts as a bar and collaterally estops the retrial of issues in a later civil trial that were actually litigated in the criminal trial." *Zinger v. Terrell*, 336 Ark. 423, 428, 985 S.W.2d 737, 740 (1999) (collecting authorities and overruling its prior precedent to allow estoppel effect to be accorded to criminal convictions). Commentators have observed for years that this practice has become increasingly accepted with the demise of the mutuality requirement. See, *e.g.,* T. Sawaya, *Use of Criminal*

*Convictions in Subsequent Civil Proceedings: Statutory Collateral Estoppel Under Florida and Federal Law and the Intentional Act Exclusion Clause*, 40 U. Fla. L. Rev. 479, 490-92 (1988); J. Thau, *Collateral Estoppel and the Reliability of Criminal Determinations: Theoretical, Practical, and Strategic Implications for Criminal and Civil Litigation*, 70 Geo. L.J. 1079, 1086-95 (1982). See also 50 C.J.S. *Judgments* § 922 (1997); 47 Am. Jur. 2d *Judgments* § 732 (1995). The Restatement (Second) of Judgments also endorses allowing third parties to draw preclusive effect from issues determined in criminal convictions, so long as the ordinary requirements for estoppel are met. See Restatement (Second) of Judgments § 85(2) (1982).

Upon careful reflection we believe that the modern trend is correct. As the authorities have noted, the differences between civil and criminal litigation all favor the criminal defendant. See Restatement (Second) of Judgments § 85, Comment *c* (1982); 40 U. Fla. L. Rev. at 490; 70 Geo. L.J. at 1089; *Zinger*, 336 Ark. at 428, 985 S.W.2d at 740. First and foremost, the State must prove the defendant guilty beyond a reasonable doubt by a unanimous verdict, a greater burden than that faced by any civil litigant. The defendant may remain silent and the State is prohibited from commenting on his silence. Moreover, the defendant has the right to counsel and to a record paid for by the State on appeal. See *Zinger*, 336 Ark. at 429, 985 S.W.2d at 740-41, quoting *Teitlebaum Furs, Inc. v. Dominion Insurance Co.*, 58 Cal. 2d 601, 375 P.2d 439, 25 Cal. Rptr. 559 (1962); *Clark*, 583 N.W.2d at 382; Restatement (Second) of Judgments § 85, Comment *c* (1982); 47 Am. Jur. 2d *Judgments* § 732, at 209 (1995). These differences militate, if anything, in *favor* of according estoppel effect to criminal convictions because of the greater safeguards in favor of their reliability. It surely could not inspire faith in our judicial system to hold that

a criminal conviction, upon which society may deprive a defendant of his liberty, or indeed his very life, is not worthy of the same preclusive effect as may be accorded an ordinary civil judgment.

Of course, as we shall discuss below, the court must evaluate a number of factors before deciding whether to allow estoppel in any given case. It will not always be correct to allow estoppel. Nevertheless, we believe we must dismantle the barrier we erected in *Thornton*.

Our overruling of this portion of *Thornton* has been foreshadowed by decisions of this court. Contrary to our holding in *Thornton* that criminal convictions should not be accorded estoppel effect, it has long been the rule in this state that criminal convictions constitute "conclusive evidence of guilt" in attorney disciplinary proceedings. See, *e.g.*, *In re Scott*, 98 Ill. 2d 9, 16 (1983) ("Conviction of a crime involving moral turpitude is conclusive evidence that grounds for imposing discipline exist. This court will not go behind the conviction"); *In re Callas*, 82 Ill. 2d 6, 14 (1980); *In re Teitelbaum*, 13 Ill. 2d 586, 588 (1958) (and cases cited therein). In *Talarico* we noted that the rule was acknowledged generally to be the opposite of that stated in *Thornton*, although the parties in that case did not contest the issue. See *Talarico v. Dunlap*, 177 Ill. 2d 185, 193 (1997) ("[i]t is generally accepted that a criminal conviction collaterally estops a defendant from contesting in a subsequent civil proceeding the facts established and the issues decided in the criminal proceeding"). And our statement in *Thornton* that the prior criminal conviction "does not conclusively establish that there was no duty to defend" (*Thornton*, 74 Ill. 2d at 151) has also been chipped away by previous decisions. See, *e.g.*, *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 377 (1999) (finding "little difficulty" in concluding as a matter of law that actions of insured who had been convicted of arson fell outside of policy cover-

age, notwithstanding that "for strategic reasons" the plaintiffs in underlying case had "phrase[d] their complaints in terms of negligence").

We reiterate that by our holding here we overrule only that portion of *Thornton* regarding the effect of a prior conviction in a subsequent civil case. The *Thornton* analysis of what constitutes fulfillment of an insurer's duty to defend when there is a conflict in interest between the insurer and the insured remains good law. See *Thornton*, 74 Ill. 2d at 152-56. We also uphold the rule that it is inappropriate to resolve a declaratory judgment action in such a manner as would bind the parties in the underlying litigation on any issues therein.

## A. *Estoppel of Savickas*

We have determined that estoppel effect may be accorded to a prior criminal conviction in an appropriate case. The next step is to determine whether this is such a case.

Collateral estoppel is an equitable doctrine, the application of which precludes a party from relitigating an issue decided in a prior proceeding. *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (1997). There are three threshold requirements which must be met before the doctrine may be applied. First, the issue decided in the prior adjudication must be identical with the one presented in the suit in question. Second, there must have been a final judgment on the merits in the prior adjudication. Third, the party against whom estoppel is asserted must have been a party or in privity with a party to the prior adjudication. *People v. Nance*, 189 Ill. 2d 142, 147 (2000); *Talarico*, 177 Ill. 2d at 191. Additionally, the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation. *Talarico*, 177 Ill. 2d at 191. Although once it was also required that the parties to the previous and current case be

identical, the "mutuality" requirement was eliminated in Illinois in 1979. See *Illinois State Chamber of Commerce v. Pollution Control Board*, 78 Ill. 2d 1 (1979).

Even when the threshold requirements are satisfied, the doctrine should not be applied unless it is clear that no unfairness will result to the party sought to be estopped. *Talarico*, 177 Ill. 2d at 191-92; *Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 467-68 (1996). The court determining whether estoppel should apply must balance the need to limit litigation against the right to an adversarial proceeding in which a party is accorded a full and fair opportunity to present his case. Also potentially relevant is the party's incentive to litigate the issue in the prior action. Even a party who did litigate an issue in a prior case might not be estopped by the result therein if he can " 'show that the original litigation was a side show rather than a struggle to the finish.' " *Talarico*, 177 Ill. 2d at 196, quoting G. Hazard, *Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems*, 66 Cornell L. Rev. 564, 584 (1981); see also Restatement (Second) of Judgments § 28 (1982).

We find Savickas may be estopped with his murder conviction. First, all of the threshold requirements are satisfied. In Savickas' criminal prosecution he was held to have committed first degree murder in shooting Thomas. See *People v. Savickas*, 230 Ill. App. 3d 322, 323 (1992), citing Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2). By finding him guilty of first degree murder the jury necessarily found him either to have intended to kill the victim, or at least to have known that his acts created a strong probability of death or great bodily harm. 720 ILCS 5/9—1(a)(1), (a)(2) (West 1992). This finding establishes that he "intended or expected" the result of his actions, the issue in the declaratory judgment action. See *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 272 (1994) (tort intent generally means " 'a desire to cause

consequences or at least [a] substantially certain belief that the consequences will result' ''), quoting 1 M. Polelle & B. Ottley, Illinois Tort Law § 1.01, at 1—3 n.8 (2d ed. 1993); Restatement (Second) of Torts § 8A, Comment *b*, at 15 (1965) ("[i]f the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result"). There was a final judgment on the merits in the criminal litigation, to which Savickas was obviously a party. Savickas litigated the issue to a jury verdict (and ensuing appeals) and a determination of his mental state was necessary to his conviction. See *People v. Jeffries*, 164 Ill. 2d 104, 118 (1995) (even if defendant argues self-defense, the jury must first find beyond a reasonable doubt that defendant killed victim without lawful justification and either intended the victim's death or knew that his acts created a strong probability of death or great bodily harm, before proceeding to determine whether defendant proved mitigating factor by a preponderance of the evidence).

Nor do we see any potential unfairness to Savickas in estopping him with his criminal conviction. Savickas had a full and fair opportunity to litigate all relevant issues in his criminal trial, and did so. It cannot seriously be questioned that he had a full incentive to litigate his criminal trial. Savickas was facing charges of first degree murder for the shooting death of his victim, a charge with a minimum penalty of 20 years' imprisonment and a potential maximum penalty of 60 years' imprisonment even in the absence of any aggravating factors. 730 ILCS 5/5—8—1(a)(1)(a) (West 1992). All of the requirements for application of collateral estoppel are present in this case. We find this is the appropriate result. Accordingly, Savickas is estopped by his criminal conviction. He therefore is precluded from arguing now that his conduct was not intentional, as this issue was determined adversely to him in the previous case.

We recognize that the estoppel in the instant case is technically "offensive." We have previously cautioned against the unrestricted use of offensive collateral estoppel, in which a plaintiff seeks to estop a defendant. See, e.g., *Kessinger*, 173 Ill. 2d at 461; *In re Owens*, 125 Ill. 2d 390, 399 (1988). There are two considerations militating against offensive estoppel. First, it encourages potential plaintiffs to adopt a "wait and see" approach rather than joining litigation against the defendant, because the plaintiff could estop the defendant if the prior case were decided against the defendant, whereas a verdict in favor of the defendant would not estop the procrastinating plaintiff. *Owens*, 125 Ill. 2d at 398-99, quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330, 58 L. Ed. 2d 552, 561, 99 S. Ct. 645, 651 (1979). In addition, offensive estoppel could be unfair to the defendant if the prior litigation involved comparatively minor damages or if the defendant had more beneficial procedural opportunities available in the second suit which could readily change the result. *Owens*, 125 Ill. 2d at 399.

We find the concerns mentioned in *Owens* do not militate against allowing American Family to estop Savickas. As a preliminary matter, we note that although this case does fit the technical definition of "offensive" collateral estoppel, in that the plaintiff is seeking to estop the defendants, a declaratory judgment action is somewhat different in nature than most lawsuits. Rather than the plaintiff attempting to obtain redress for a past wrong, the plaintiff in a declaratory judgment action simply seeks construction of a governmental regulation or written instrument and a declaration of the rights of the parties involved. 735 ILCS 7/2—701(a) (West 1998); see also *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 205-06 (1991). In this suit American Family is attempting to determine its obligations in advance in order to preempt a subsequent suit in

which it would be named defendant. It is debatable whether this case should be treated as one involving "offensive" collateral estoppel.

In any event, however, assuming *arguendo* that our warning in *Owens* against the unrestricted use of offensive estoppel should be heeded in declaratory judgment actions, neither of the concerns raised there give any pause in the instant case. First, American Family was not utilizing a "wait and see" approach. American Family was of course unable to join the criminal proceeding and moreover had no reason to file its declaratory judgment action until Elizabeth filed the underlying lawsuit and Savickas tendered his defense. And, as previously discussed, Savickas clearly had full incentive to litigate the charge of first degree murder, and he had a fair opportunity to do so. Moreover, Savickas had a far greater procedural advantage in the criminal trial than he would in a civil contest with American Family. See 70 Geo. L.J. at 1089 ("the obvious procedural differences between criminal and civil proceedings actually favor applying collateral estoppel in a subsequent civil proceeding. A criminal defendant receives procedural protections surpassing those accorded any civil litigant, and thus cannot legitimately question the adequacy of his opportunity to litigate or the reliability of the determinations made").

We find that American Family may collaterally estop Savickas with his criminal conviction. In the criminal prosecution it was established that Savickas intended the harm which is the subject of the underlying suit. Accordingly, that harm falls within a policy exclusion, and American Family has no duty to defend Savickas. Because American Family has no duty to defend, it also will have no duty to indemnify Savickas against a judgment in the underlying case. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993); B. Os-

trager & T. Newman, Handbook on Insurance Coverage Disputes § 5.08, at 254 (9th ed. 1998).

## B. *Estoppel of Elizabeth*

American Family urges that it may estop not only Savickas, but also Elizabeth, the plaintiff in the underlying tort action, with the verdict in the criminal trial. At first glance this may seem an unlikely result. Elizabeth clearly was not a party to the criminal suit and in the criminal suit her interests would appear to have been wholly antagonistic to Savickas' interests, just as they are antagonists in the underlying tort suit. However, in this declaratory judgment action it is American Family, not Savickas, who seeks to estop Elizabeth. This is a crucial point.

As previously noted, the only source for any duty owed by American Family is its contract with Savickas. Elizabeth cannot proceed against American Family directly before obtaining a judgment against Savickas. See *Marchlik v. Coronet Insurance Co.*, 40 Ill. 2d 327, 332-33 (1968). Once she has obtained a judgment against Savickas, Elizabeth's rights against American Family would be wholly derivative of Savickas' contractual right to indemnity, and she can have no greater rights against American Family than he. *Meyer v. Aetna Casualty Insurance Co.*, 46 Ill. App. 2d 184, 190 (1964) ("As a general rule, a judgment creditor is in no better position in a suit [against an insurance company] than the insured, and any defense which the insurer may assert against the insured may be asserted as a defense against the injured party"). See also *Murphy v. Urso*, 88 Ill. 2d 444, 451 (1981) (noting that in garnishment action against insurer the judgment creditor of insured "stood in [the] shoes" of the insured); *McRoberts v. Adams*, 60 Ill. 2d 458, 464 (1975) (dismissing garnishment action by judgment creditor against insurance company after determining that no coverage was provided by the company to the putative

insured for the incident in question). Because of the derivative nature of her rights, Elizabeth is bound by the prior criminal action just as is Savickas in this litigation against American Family. See *Ohio Casualty Insurance Co. v. Clark*, 583 N.W.2d 377 (N.D. 1998); *State Mutual Insurance Co. v. Bragg*, 589 A.2d 35 (Me. 1991); *State Farm Fire & Casualty Co. v. Reuter*, 299 Or. 155, 700 P.2d 236 (1985); *Tradewind Insurance Co. v. Stout*, 85 Haw. 177, 938 P.2d 1196 (App. 1997); *Safeco Insurance Co. of America v. Yon*, 118 Idaho 367, 796 P.2d 1040 (App. 1990). *Contra, Massachusetts Property Insurance Underwriting Ass'n v. Norrington*, 395 Mass. 751, 756, 481 N.E.2d 1364, 1368 (1985) (recognizing general rule that the injured party has no greater rights than the insured against the insurer but holding that allowing the injured party to proceed against the insurer despite the insured being estopped from doing so "does no violence to the substantive principle"). See also *Aetna Casualty & Surety Co. v. Jones*, 220 Conn. 285, 596 A.2d 414 (1991) (insurer granted declaratory judgment that insured's first degree manslaughter conviction established that injuries were intentionally caused and thus not covered by policy); *D'Arata v. New York Central Mutual Fire Insurance Co.*, 76 N.Y.2d 659, 564 N.E.2d 634, 563 N.Y.S.2d 24 (1990) (insurer not required to pay judgment against insured despite insurer's failure to provide defense, because plaintiff in underlying suit was estopped by insured's criminal conviction from relitigating insured's intent); *Aetna Life & Casualty Insurance Co. v. Johnson*, 207 Mont. 409, 673 P.2d 1277 (1984) (insurer allowed to rely on insured's conviction for arson to bar insured and insurer of surrounding property from recovering for fire damage).

Accordingly, in the declaratory judgment action, Elizabeth is precluded from contending that Savickas' actions in shooting the decedent were not intentional.

III. Negligent Assessment of the Need for Self-Defense

Elizabeth contends that the duty to defend may still be predicated on the allegation in the complaint that Savickas negligently assessed a need for self-defense against Thomas before shooting him, citing *State Farm Fire & Casualty Co. v. Leverton*, 289 Ill. App. 3d 855 (1997); *Topps v. Ferraro*, 235 Ill. App. 3d 43 (1992); *Wegman v. Pratt*, 219 Ill. App. 3d 883 (1991); and *Blackburn v. Johnson*, 187 Ill. App. 3d 557 (1989). American Family urges that these authorities were decided incorrectly, and requests that we overrule them. We need not determine whether Illinois law supports a free-standing cause of action based on negligent assessment of the need for self-defense, however, because the criminal conviction estops Elizabeth and Savickas on this theory as well.

At his criminal trial, Savickas argued that he was acting in self-defense and argued in the alternative that his offense should be reduced to second degree murder because he *unreasonably* believed that he was acting in self-defense. *Savickas*, 230 Ill. App. 3d at 329-33. By its verdict that Savickas was guilty of first degree murder the jury necessarily resolved both of these issues against Savickas. Accordingly, since we have already determined that in the declaratory judgment action the criminal conviction should be accorded preclusive effect with respect to both Savickas and Elizabeth, both are barred from asserting that Savickas believed—even unreasonably—that he was acting in self-defense.

CONCLUSION

For the reasons above stated, we find the trial court properly entered judgment in favor of plaintiff American Family on its declaratory judgment action. The judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*