No. 3--04--0119 

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2005

METROPOLITAN PROPERTY and     ) Appeal from the Circuit Court

CASUALTY INSURANCE COMPANY, ) of the 14th Judicial Circuit,

                              ) Rock Island County, Illinois   

Plaintiff-Appellee, )

)

v. ) No.  01--MR--208 

)

JAMES M. PITTINGTON and       )    

PETE R. HARRISON,             )                              

) Honorable Mark A. Vandeweile,

Defendants-Appellants.   ) Judge, Presiding.

Modified Upon 
Rehearing

JUSTICE SCHMIDT delivered the opinion of the court:

Plaintiff, Metropolitan Property and Casualty Insurance Company, issued a policy of insurance to defendant James Pittington.  On May 7, 2000, Pittington shot defendant Pete Harrison while both were at the Pittington residence.  In a separate case, Harrison's estate filed a 
negligence action against Pittington seeking damages for bodily injury.  Prior to the filing of the bodily injury suit, Metropolitan 
filed this declaratory judgment action seeking a declaration that the policy of insurance issued to Pittington would not indemnify him for monetary damages stemming from the shooting of Harrison.  The circuit court of Rock Island County ultimately granted Metropolitan's motion for summary judgment.  Harrison appeals.  

BACKGROUND

Following the shooting, Pittington was charged with attempted murder, aggravated battery with a firearm, and unlawful possession of a firearm without a Firearm Owner's Identification Card (FOID).  During trial, an agreement between Pittington and the State was reached wherein Pittington agreed to plead guilty to reckless conduct in violation of section 12--5 of the Criminal Code of 1961 (720 ILCS 5/12--5 (West 2000)) and provide a statement that, based upon the evidence presented, he acknowledged that he would have been found guilty of the same charge had the case proceeded to 
verdict.  Pittington was also found guilty of unlawful possession of a firearm without a FOID card.

Metropolitan filed this declaratory judgment against Pittington and Harrison claiming that any damages which resulted from Pittington's actions were excluded from coverage.  After Pittington pled guilty to reckless conduct, Metropolitan filed a motion for summary judgment, which was denied by the trial court.  Metropolitan then filed a motion for reconsideration, which was also denied by the trial court.  Finally, Metropolitan filed a "renewed motion for reconsideration," which asked the trial court to reverse its original ruling and grant Metropolitan's motion for summary judgment.  By order dated October 20, 2003, the trial court granted Metropolitan's renewed motion for reconsideration and awarded Metropolitan summary judgment.

In its final order, the trial court stated, 
inter alia
:

     "Summary Judgment is appropriate if there is no

material issue of fact in dispute.

     The Court has reviewed the transcript from the

criminal proceeding in 2000 CF 386.  Counsel represent

that this is the same evidence that this Court would

hear in a civil trial.

     The Court finds that there is no material issue

of fact.  The Court further finds that the Metropolitan

Policy excludes coverage for this incident.  Pittington's

loading and discharging a firearm was a criminal act.

The transcript further indicates that Pittington told

Capt. Chisholm that he intended to scare Harrison with

the gun and that it was loaded in case he needed it

later.

     Pittington is the insured, he committed a criminal

act (reckless conduct) by loading and discharging the

shotgun.  This is not a case where Pittington was

shooting at a river rat and Harrison walked around a 

blind corner and was hit.  Pittington was exiting the

same door Harrison was entering when the gun went off.

     Pittington previously loaded the shotgun with

Harrison in mind.  Pittington could have scared 

Harrison without loading the gun.  Pittington made the

statement to police that the gun was loaded in case

he needed it later.  That indicates that Pittington

expected, anticipated or intended to shoot Harrison

at some point.

     Plaintiff's policy excludes coverage for actions

by Mr. Pittington."

It is from this order that Pittington appeals.  

ANALYSIS

The following issues were raised by the parties on appeal: (1) whether a question of material fact exists which was sufficient to preclude a summary judgment award to the plaintiff; (2) whether defendant's plea to reckless conduct has any collateral effect on these proceedings; and (3) whether the 
Peppers
 doctrine requires that resolution of this case await final resolution of the underlying law suit.

I. Question of Material Fact and Summary Judgment

In appeals from summary judgment orders, we conduct a 
de novo 
review.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992).  Summary judgment is appropriate when the pleadings, depositions, affidavits, and admissions show that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 2000); 
Largosa v. Ford Motor Co.
, 303 Ill. App. 3d 751, 708 N.E.2d 1219 (1999).  In addressing the granting of a motion for summary judgment, an appellate court must consider all facts revealed in the record and all grounds alleged by the parties in order to determine whether a genuine issue of material fact exists.  
Seefeldt v. Millikin National Bank of Decatur
, 154 Ill. App. 3d 715, 506 N.E.2d 1052 (1987).  Summary judgment should be denied where a reasonable person could draw divergent inferences from undisputed facts.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).  The construction of the language of an insurance policy is a question of law properly decided on a motion for summary judgment, and as such, interpretation can be determined on review independent of the trial court's judgment.  
Dairyland Insurance Co. v. Linak
, 208 Ill. App. 3d 892, 567 N.E.2d 638 (1991).

If an insurance policy is clear and unambiguous, the words of the policy will be given their plain and ordinary meaning.  
United States Fire Insurance Co. v. Schnackenberg
, 88 Ill. 2d 1, 429 N.E.2d 1203 (1981).  In determining whether there is an ambiguity, the clause in question must be read in its factual context and not in isolation.  
Schnackenberg
, 88 Ill. 2d at 5, 429 N.E.2d at 1205.  

The policy issued to Pittington from Metropolitan includes the following exclusion:  

     "
Coverage E - Personal Liability and Coverage F -

Medical Payments to Others 
do not apply to 
bodily
 

injury
 or 
property damage
:

     a.  Which may reasonably be expected to result

from...criminal acts of an insured person, or which

are in fact expected, anticipated or intended by an

insured person."

The trial court found that based upon the "expected, anticipated or intended" clause of this exclusion, Metropolitan was not obligated under the policy of insurance for any damages which Pittington may be legally liable to pay to Harrison.  Defendant contends that the trial court's finding was error.  

Initially, defendant maintains that there is a question of material fact that would preclude summary judgment as to whether the bodily injury to Harrison was in fact expected, anticipated or intended by Pittington or merely the result of an accident.  We agree. 

After considering all of the facts revealed in the record and all of the grounds alleged by the parties, we find that  reasonable persons could draw divergent inferences from the facts contained within the record.

The parties agreed and the trial court took note of the fact that the parties anticipated that testimony in the case at bar would mirror that of Pittington's criminal trial.  The trial court noted that its review of the criminal record indicated that Pittington expected, anticipated or intended to shoot Harrison at some point.  Undoubtedly, the trial court came to this opinion based on the testimony of Deputy Randy Heisch, Deputy Mike Clary, and Captain Jeffery Chisholm.  In fact, the trial court identified part of Captain Chisholm's testimony as a basis for its decision.  Certainly, after reviewing those officers' testimony, one could form the reasonable opinion that Pittington intended to shoot Harrison.  

However, it is also 
possible that after reviewing the testimony of Charles Buttgen, Therese Murray Roof, 
Pete Ray Harrison (the victim) and Deputy James Patterson, the divergent view that Pittington accidently shot Harrison may also be reasonable.  Testimony at the criminal trial indicated that Harrison told nurse Johnson, while receiving treatment, that the shooting was accidental.  Theresa Roof, Harrison's sister, testified that she immediately went to her brother to render first aid after the shooting and he stated, "It was an accident.  Where is Mike?"  Certainly, absent any testimony from Pittington, this testimony is sufficient to raise a genuine issue of material fact regarding the nature of this shooting.  As such, summary judgment is simply not appropriate.

Metropolitan stresses that since the parties stipulated that the evidence in a trial of the declaratory judgment action would be the same as that which was produced in a criminal trial, the hearing on the motion for summary judgment was, in fact, converted to a trial on the merits.  Metropolitan cites no authority for this novel proposition.  The trial court's order of October 20, 2003, which ultimately granted Metropolitan's motion for summary judgment indicates "[a]t the latest hearing on the motion to reconsider, all parties indicated that they did not anticipate the evidence that would be presented in this case would be any different than presented in a criminal case."  Metropolitan argues on appeal that Pittington stipulated that he was guilty of the criminal offense of reckless conduct.  This argument is simply not supported by the record.  To the extent that Pittington's counsel stipulated to anything in the face of Metropolitan's summary judgment motion, it was only that there would be no evidence other than that which had previously been introduced at the criminal trial.  This is a far cry from a stipulation to the facts selected by Metropolitan which support its motion for summary judgment.

Metropolitan argues that somehow because the trial court, with the agreement of the parties, ruled on Metropolitan's summary judgment motion after reviewing the evidence contained in Pittington's criminal trial, that the trial court's ruling on the motion for summary judgment was, in fact, a ruling on the merits and, therefore, the correct standard of review for this court is manifest weight of the evidence rather than 
de novo
.  This case is before us on the trial court's ruling on a motion for summary judgment, not the trial court's ruling at the conclusion of a bench trial.  In a hearing on the merits, the trier of fact, in this case, the trial judge, can appropriately resolve questions of fact.  In ruling on a motion for summary judgment, a trial court cannot resolve questions of material fact.  

Metropolitan postured these issues in the trial court in the form of a motion for summary judgment.  
When the trial court denied the motion, Metropolitan could have asked that the case be moved toward a hearing on the merits.  Instead, it filed a motion to reconsider.  When that motion was denied, it filed a "renewed motion for reconsideration" which the trial court granted.  Metropolitan cannot now complain of the 
de novo 
standard of review when it insisted this case be resolved below on summary judgment as opposed to a hearing on the merits.  Whether Pittington's defense to a hearing on the merits would have been any different, we have no way of knowing.  We are confident that he had the right to know whether, when the court took the matter under advisement, it was ruling on a motion for summary judgment or whether it was conducting a "paper trial."  In addition to the fact that there is no case authority to support Metropolitan's argument, we find that it would be totally unfair to let one party sandbag another by presenting a motion for summary judgment to the court and then being allowed to argue that the favorable ruling on the motion for summary judgment was actually a ruling on the merits, in which the trial court was allowed to resolve questions of fact.

II. Collateral Effect of Guilty Plea

Metropolitan argues that, as a matter of law, Pittington's plea to reckless conduct (720 ILCS 5/12--5) (West 2000)) collaterally estops Pittington from arguing that the injury to Harrison was not expected, anticipated, or intended.  We disagree.

While criminal convictions can 
have an estoppel effect on civil litigation such as this (see 
American Family Mutual Insurance Co. v. Savickas
, 193 Ill. 2d 378, 739 N.E.2d 445 (2000); 
State Farm Fire & Casualty Co. v. Martin
, 186 Ill. 2d 367, 710 N.E.2d 1228 (1999)
), three threshold requirements must be met before the doctrine is applied.  
Savickas
, 193 Ill. 2d at 387.  The first requirement is that the issue decided in the criminal adjudication must be identical with the one presented in the declaratory judgment action.  
Savickas
, 193 Ill. 2d at 387.  Second, there must have been a final judgment on the merits in the prior adjudication.  
Savickas
, 193 Ill. 2d at 387.  Third, the party against whom estoppel is asserted must have been a party or in privity with a party to the prior adjudication.  
Savickas
, 193 Ill. 2d at 387.

We agree with the trial court that Pittington's plea to reckless conduct 
has no estoppel effect on this declaratory judgment action.  The court was correct when it stated, "The fact that Pittington pled guilty to reckless conduct is not determinative" to the outcome of this case.  

The issue
, given the wording of the exclusion in Metropolitan's policy, is whether Pittington "in fact expected, anticipated or intended" to cause bodily injury to Harrington.  In pleading guilty to reckless conduct, Pittington admitted he performed an act that caused the harm or endangered the safety of Harrison with "conscious disregard" of a substantial and unjustifiable risk.  See 720 ILCS 5/12--5, 4--6 (West 2000).  Pittington's plea is in no way an admission that he expected, anticipated or intended to cause bodily harm to Harrington and, therefore, cannot meet the first part of the 
Savickas
 estoppel test.  Had Pittington pled or been found guilty of intentionally harming Harrington (as was the case in 
Savickas
 and 
Martin
), then his criminal conviction would satisfy the first prong of the 
Savickas
 estoppel test given the policy's exclusion for expected, anticipated, or intentional acts which cause bodily injury.  However, Pittington did not plead guilty to an intentional act.

The 
Savickas
 court further noted that collateral estoppel will not be summarily applied even when the three requirements are satisfied.  
Savickas
, 193 Ill. 2d at 387.  The court stated, "Additionally, the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation."  
Savickas
, 193 Ill. 2d at 387.  Defendants submit that the State, by allowing Pittington to plead to reckless conduct in the middle of his attempted murder trial, rendered that litigation a "side show," which would preclude any rulings or admissions therein from being used collaterally.  See
 Talarico v. Dunlap
, 177 Ill. 2d 185, 196, 685 N.E.2d 325, 330 (1997).  We agree. 

If one is charged with capital treason and allowed to plead to driving with a loud muffler, any incentive to litigate vanishes; the plea will have no estoppel effect on collateral civil litigation.  
Pittington was originally charged with attempted murder with a firearm, a Class X felony.  720 ILCS 5/8--4(c)(1) (West 2000)).  While the normal sentencing range for a Class X felony is between 6 and 30 years (730 ILCS 5/5--8--1(a)(3) (West 2000)), the fact that he "personally discharged a firearm" during the incident mandated that "25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court."  720 ILCS 5/8--4(c)(1)(D) (West 2000).  Pittington, if convicted, was looking at 31 years to natural life in prison.  The "practical realities" of Pittington's criminal litigation were such that when offered the chance to plead to misdemeanor reckless conduct, he had little incentive to continue the litigation in a "struggle to the finish."  
Talarico
, 177 Ill. 2d at 196. Even an innocent defendant would have to be of stout heart to reject such an offer.  For this reason, we agree with the trial court that the plea is not determinative to the outcome of this matter.

Metropolitan contends that this court ignores the objective prong of the exclusion at issue.  Because we find that the conviction has no collateral effect, we hold that there remains a question of material fact relating to the "objective prong," 
i.e.
, whether Pittington's conduct was criminal. 

III. 
Peppers
 Doctrine

Defendant 
contends that under the 
Peppers
 doctrine, it was improper for the trial court to decide this issue prior to its resolution in the underlying tort case.  
Maryland Casualty Co. v. Peppers
, 64 Ill. 2d 187, 355 N.E.2d 24 (1976).  

We disagree
.  We hold that this declaratory judgment action can proceed to resolution prior to the conclusion of the underlying tort suit.

In 
Peppers
, our supreme court stated:

"Under the principle of collateral estoppel the

finding in the declaratory judgment action that

the injury was intentionally inflicted could

possibly establish the allegations of the assault

count in the complaint and might preclude [the 

victim's] right to recover under the other theories 

alleged. [Citations.]  In a case quite similar to 

ours the appellate court held that the ruling and 

judgment of the trial court in a declaratory judgment 

action under such circumstances were 'premature' and 

should be reversed. [Citation.] We agree with that 

holding.  The finding of the trial court in our case 

that the injury was intentional was not proper in this

declaratory judgment action.  This issue was one of 

the ultimate facts upon which recovery is predicated

in the [underlying] personal injury action against 

[the shooter] ***."  
Peppers
, 64 Ill. 2d at 197.

Moreover, in a more recent case that also involved a shooting, declaratory judgment action, and underlying tort suit, our supreme court stated:

"We also uphold the rule that it is inappropriate

to resolve a declaratory judgment action in such a 

manner as would bind the parties in the underlying

litigation on any issues therein."  
American Family

Mutual Insurance Co. v. Savickas
, 193 Ill. 2d 378,

387, 739 N.E.2d 445, 451 (2000).  

In both 
Peppers
 and 
Savickas
, the underlying tort suits included negligence counts and intentional tort counts.  
Peppers
, 64 Ill. 2d at 193; 
Savickas
, 193 Ill. 2d at 380-81.  The record on appeal in this case indicates that the underlying tort suit is based solely on theories of negligence.  Therefore, the resolution of this declaratory action would not decide any of the "ultimate facts" upon which recovery in the underlying tort suit is predicated.  As such, we hold the 
Peppers 
doctrine does not prohibit this case from moving forward prior to the conclusion of the underlying tort suit.
 

CONCLUSION

    In conclusion, we find that Pittington's criminal conviction has no collateral effect under the circumstances, that there was at least enough evidence that the shooting was accidental to create a question of material fact and therefore that summary judgment is inappropriate.  Finally, we affirm the circuit court's decision to allow this declaratory judgment action to proceed to resolution prior to the conclusion of the underlying tort suit.

Affirmed in part and
 reversed in part; cause remanded.

LYTTON and O'BRIEN, JJ., concur.