UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 26, 2006[*]
Decided October 30, 2006

**Before**

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-2169

| | |
|---|---|
| SENIECE ANN GRAHAM and LEE EDWARD GRAHAM, *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Central District of Illinois |
| *v.* | No. 04-2136 |
| W.K. HILDEBRAND, WILLIAM M. LAWLER, and JOHN F. BENNETT, *Defendants-Appellees*. | Michael P. McCuskey, *Chief Judge*. |

**O R D E R**

After a confrontation with police in Charleston, Illinois, Lee Graham and his sister Seniece brought suit under 42 U.S.C. § 1983 claiming as relevant here that three of the arresting officers acted without probable cause and that one officer assaulted them with oleoresin capsicum, or pepper spray, without provocation. The district court granted summary judgment for the officers, and the Grahams appeal.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

We conclude that the Grahams' excessive-force claim should have proceeded against the officer who dispersed the pepper spray, but otherwise we affirm the judgment of the district court.

Most of the facts are undisputed. Around 1:00 a.m. on September 26, 2003, Lee, Seniece, and their brother William—who are black—encountered a predominantly white crowd gathering in the parking lots between two Charleston restaurants. The agitated crowd apparently had formed after an altercation between a black male and a white female, and some members were yelling racial epithets. While Lee was inside one of the restaurants, a white male from the crowd punched Seniece in the jaw. When Lee returned, Seniece was across the street from the crowd by William's car, and William was yelling at the throng demanding to know who had hit their sister. The brothers then walked toward Seniece, who met them in the middle of the street and suggested that they all leave.

At that point the Charleston police arrived, and Officer John Bennett approached the Grahams as they stood in the street. He asked them what was happening, and they explained that a man in the crowd had hit Seniece. As Bennett left the Grahams to speak with the attacker, 50 to 100 people in the crowd rushed into the street toward the Grahams, pushing police officers along the way. The crowd was yelling racial epithets, and when it reached the Grahams, members of the crowd began pushing and shoving the Grahams. Both Lee and Seniece admittedly pushed and shoved persons in the crowd to keep them back.

It is undisputed that Officer Bennett then returned to the Grahams and intentionally discharged his pepper spray at Lee and Seniece. As far as this record shows, he did so without warning. The parties differ, though, about what happened immediately before Officer Bennett sprayed the Grahams. Bennett testified that when he returned to the Grahams he stood with his back to the crowd and put his hand on Lee's shoulder (he described this as his "field interview" position). Lee then swatted his hand away and pushed him. According to Bennett, he then told Lee he was under arrest, at which point Seniece stood between him and Lee and tried to push the officer away from Lee. Bennett maintains that he dispersed the pepper spray because the Grahams were pushing him and disobeying him. Lee and Seniece, in contrast, testified by deposition that they were still defending themselves against the crowd when Bennett returned and sprayed them. Both deny that they ever pushed, resisted, or used any force against the officer, and both deny that he told either of them that they were under arrest prior to dispersing the pepper spray.

It is also undisputed that after Officer Bennett dispersed the pepper spray he moved a visually incapacitated Lee away from the crowd and, after what both sides describe as a "struggle," handcuffed him and escorted him to a squad car.

Meanwhile, as Seniece tried to move away from the crowd, a person she cannot identify struck her in the right leg with an object, and she fell to the ground. Officer William Lawler placed her under arrest, another male officer handcuffed her, and a female officer helped her into a squad car. Lee's eyes were irritated for a couple of days after the incident; Seniece suffered from blurry vision for about four days. Both Lee and Seniece, represented by counsel, attended a preliminary hearing on October 20, 2003, at which probable cause was established to support charges against both of aggravated battery of a police officer, 720 ILCS 5/12-4(a), and against Lee for resisting or obstructing a police officer, *id*. § 5/31-1. A jury acquitted them on the aggravated battery charges but convicted Lee on the resisting or obstructing charge. William was convicted on two counts of threatening a public official. 720 ILCS 5/12-9.

Based on the parties' respective accounts, the district court held that the undisputed evidence established that the officers at least had probable cause to arrest the Grahams for battery committed against members of the crowd, and that the use of pepper spray on the Grahams was reasonable because of the need to control the crowd. On appeal the Grahams continue to maintain that they were arrested without probable cause and that, viewing the evidence in the light most favorable to them, the use of pepper spray amounted to excessive force. The officers contend, as they did in the district court, that the Grahams are precluded from arguing the absence of probable cause because that question was decided against both at their preliminary hearing and against Lee again at trial. The officers also argue that there was probable cause to arrest the Grahams for battery and that the use of pepper spray was reasonable given their purported defiance of the officers and efforts to resist arrest. Finally, the officers argue that, even if the arrests were not supported by probable cause and the use of pepper spray constituted excessive force, they are entitled to qualified immunity.

We first address the officers' preclusion argument. Where, as here, a defendant contends that a § 1983 claim is precluded by a prior proceeding in state court, we determine the preclusive effect of the state proceeding by applying that state's rules of issue preclusion, or collateral estoppel. *See* 28 U.S.C. § 1738; *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1020 n.9 (7th Cir. 2006). Under Illinois law, collateral estoppel applies if "(1) the issue decided in the prior adjudication is identical to the issue presented in the present suit; (2) a final judgment was entered on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party to or in privity with a party to the prior adjudication." *Gumma v. White*, 833 N.E.2d 834, 843 (Ill. 2005). A criminal conviction precludes relitigation of issues that were necessarily decided in the criminal proceedings, *Am. Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 449-51 (Ill. 2000), but collateral estoppel does not apply if a defendant is "acquitted and

thereby denied the opportunity to appeal the trial court's ruling." *People v. Sutherland*, No. 99047, 2006 WL 2690150, at *8 (Ill. Sept. 21, 2006).

Here, Seniece was acquitted, so her federal claims are not precluded. Lee, on the other hand, was acquitted of aggravated battery of a police officer, but a jury determined beyond a reasonable doubt that he committed the offense of resisting or obstructing a peace officer. *See* 720 ILCS 5/31-1. His conviction necessarily establishes that there was probable cause to arrest him at least for that offense, and thus his first claim is precluded. *See Savickas*, 739 N.E.2d at 451. We note, however, that Lee's conviction for resisting or obstructing a peace officer does not preclude him from arguing that he was fully cooperative with Officer Bennett before the pepper spray was dispersed; the officers have not argued that the jury's verdict necessarily determined that Lee resisted *before* Bennett dispersed the pepper spray.

We turn then to the merits. Our review is *de novo*, and we view the evidence in the light most favorable to the Grahams. Fed. R. Civ. P. 56(c); *Killinger v. Johnson*, 389 F.3d 765, 769 (7th Cir. 2004). Since the officers claimed qualified immunity, the Grahams were required to establish both that a reasonable jury could find from the evidence that the officers violated a constitutional right, and that the right was clearly established at the time. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003). Whether a right was clearly established is an objective inquiry; we consider whether it would have been clear to a reasonable officer in the defendant's position that his conduct was unlawful. *Saucier*, 533 U.S. at 202.

We first examine Seniece's claim that Officer Bennett lacked probable cause to arrest her. A police officer has probable cause to arrest if the totality of the facts would support a reasonable belief that the suspect has committed or is committing a crime. *Lawrence v. Kenosha County*, 391 F.3d 837, 842 (7th Cir. 2004). The test is objective; the officer's subjective reason for making the arrest is irrelevant, *see Whren v. United States*, 517 U.S. 806, 813 (1996), and "need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). In this instance, all parties agree that Seniece was pushing and shoving people in the crowd, and that fact alone would support a reasonable officer's belief that she was committing the offense of battery. *See* 720 ILCS 5/12-3 ("[A] person commits battery if he intentionally or knowingly without legal justification and by any means . . . makes physical contact of an insulting or provoking nature with an individual."). That Officer Lawler may have had a different reason for placing her under arrest (his actual reason is unclear) does not matter. *See Devenpeck*, 543 U.S. at 153. We therefore uphold the grant of summary judgment on this claim as to all three officers.

We reach a different result, however, as to the excessive-force claim. We analyze claims arising from the use of force during an arrest under the Fourth

Amendment's "reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004); *Lawrence*, 91 F.3d at 843. The reasonableness of the force employed turns on the totality of the circumstances and must be judged from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396. A police officer's use of force in the course of an arrest is unconstitutional if, based on the totality of the circumstances, "the officer used greater force than was reasonably necessary to make the arrest." *Payne*, 337 F.3d at 778 (citing *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)). We consider the facts and circumstances of the case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. We are mindful that police officers have to make "split second judgments" about the appropriate amount of force "in circumstances that are tense, uncertain, and rapidly evolving," *id.* at 396-97; *see also Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005), but in this case there exists a material dispute of fact concerning whether *any* use of force would have been appropriate at the point that Officer Bennett dispersed the pepper spray.

Officer Bennett maintains that he used pepper spray because the Grahams pushed him and were being uncooperative after he announced that Lee was under arrest. The Grahams testified by deposition, however, that before Bennett dispersed the spray they had not used or threatened to use any force against the officers. They also aver that Bennett sprayed them before announcing that either of them was under arrest, and without giving them an opportunity to comply peacefully with his orders. Bennett tells a different story, but credibility assessments are for the factfinder. *Payne*, 337 F.3d at 770. Viewing the facts in the light most favorable to the Grahams, as we must, a reasonable jury could find that the use of pepper spray was not necessary to effectuate the Grahams' arrests and, hence, constituted excessive force. *See id.* at 778. Moreover, although the district court reasoned that using pepper spray would have been a reasonable means for Bennett to control the unruly crowd, Bennett offered no evidence that he employed the spray for that purpose.

We now consider whether it was clearly established that the use of pepper spray would constitute excessive force under these circumstances. Under *Saucier*, qualified immunity will protect an officer who has violated a constitutional right if the contours of the right were not so clear that a reasonable officer would have known he was violating the law. *Saucier*, 533 U.S. at 202. There need not be a case directly on point; if various courts have agreed that certain conduct is a constitutional violation under similar facts, the officer will not be entitled to qualified immunity. *See id.* at 202-03.

Although we have not specifically addressed a qualified immunity defense in a case involving the use of pepper spray, other circuits have found an officer's use of pepper spray reasonable when the individual sprayed was either resisting arrest or refusing reasonable police requests. *See Jackson v. City of Bremerton*, 268 F.3d 646, 652-53 (9th Cir. 2001) (holding that use of pepper spray was reasonable given individual's active interference with officers); *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) (holding that use of pepper spray was reasonable where individual was resisting arrest); *Monday v. Oullette*, 118 F.3d 1099, 1104-05 (6th Cir. 1997) (holding that use of pepper spray was reasonable where officer warned that he would discharge it if individual did not cooperate); *Ludwig v. Anderson*, 54 F.3d 465, 471 (8th Cir. 1995) (holding that use of pepper spray was reasonable where individual refused to obey police orders). At the same time, other courts also have held that the gratuitous use of pepper spray—when an individual is in custody or otherwise passive—is excessive. *See Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) (holding that use of pepper spray was excessive where individual was handcuffed in patrol car and posed no threat to officers); *Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002) (holding that use of pepper spray on peaceful protestors who refused to unchain themselves was excessive; pepper spray was clearly unnecessary to subdue, remove, or arrest them); *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994) (holding that use of mace on blinded and incapacitated person sitting in car constituted excessive force).

Viewing the facts in the light most favorable to the Grahams, they were not resisting arrest or otherwise interfering with the officers at the point when they were shot with pepper spray. And while they were not entirely "passive" or "incapacitated"—they were pushing other persons in the crowd—Officer Bennett has never asserted that he dispersed the pepper spray to stop them from fighting with others rather than because they were resisting him. Morever, by the Grahams' account, Bennett never gave them an opportunity to comply peacefully with his orders; he simply shot pepper spray without warning at the targets of an angry and potentially violent mob—the precise individuals, if the Grahams are telling the truth, that he should have been protecting. Because a jury could find that a reasonable officer in Bennett's position would have known, under the Grahams' version of events, that dispersing pepper spray in their faces was an excessive use of force, we vacate the grant of summary judgment on the excessive-force claim as to Bennett.

Finally, although the Grahams named Officers Lawler and Hildebrand in their complaint, they did not present any evidence suggesting that either officer failed to intervene to stop or prevent the application of excessive force. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Lee admitted that there was no opportunity for any officer to intervene to prevent Officer Bennett's spontaneous

use of pepper spray. Accordingly, no reasonable jury could find Lawler or Hildebrand liable on the excessive-force claim.

The grant of summary judgment on the Grahams' excessive-force claim is VACATED as to Officer Bennett, and that claim is REMANDED for further proceedings. In all other respects the judgment is AFFIRMED.