In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-4265

ARTHUR BROWN,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 8134—**John W. Darrah**, *Judge.*

ARGUED OCTOBER 8, 2009—DECIDED MARCH 30, 2010

Before EASTERBROOK, *Chief Judge*, and MANION and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Arthur Brown sued Officer Duane Blackman under 42 U.S.C. § 1983 for excessive force, alleging Officer Blackman shot him without justification. The district court granted Officer Blackman summary judgment, concluding that because Brown had been convicted of aggravated assault, aggravated unlawful use of a weapon, and unlawful possession of

a weapon by a felon based on his encounter with Officer Blackman, Brown's current suit was barred by collateral estoppel. Brown appeals. We affirm.

**I.**

On April 24, 2001, Officer Duane Blackman was patrolling the Cabrini-Green housing project in Chicago, Illinois, with his partner, Officer Aaron Long. Both officers were wearing plain clothes. During the patrol Officer Blackman spotted a man, later identified as Lazerek Grant, engaged in a suspected drug transaction with the passenger of an automobile. Another man, later identified as Jeremiah Brooks, stood near Grant during the transaction. After observing the drug deal, the officers parked their car and got out to investigate. While approaching Grant and Brooks, the officers witnessed a second similar transaction. When Grant and Brooks saw the officers approaching with their weapons drawn, they took off running. Officer Blackman chased Brooks and Officer Long went after Grant. The chase led Officer Blackman into a nearby parking lot, where he saw the plaintiff in this case, Arthur Brown. Brown was not involved in the original drug deal, but according to Officer Blackman, Brown was holding a black gun and refused to drop it even though Officer Blackman displayed his police badge and ordered him to do so. Officer Blackman maintains that Brown instead began walking backwards while pointing the gun at him. Officer Blackman claims he continued to shout for Brown to drop the weapon but when Brown failed to comply, Officer Blackman shot him, striking him several times. After Brown fell to the

ground, Officer Blackman claims he pried Brown's fingers off the gun and took possession of the weapon. Brooks and Officer Long would later confirm that they saw Brown point a weapon toward Officer Blackman.

Brown had a different version of the events: Brown claimed that he did not have a gun, that Officer Blackman shot him in the back, and that after shooting him, Officer Blackman placed a "drop" gun in his hand. In support of his version, Brown pointed to a nurse's statement that he had stitches in the back of his head (although the nurse admits not knowing where the bullet entry wound was). Brown also pointed to a statement from Danyiel Larkins who claimed he observed the incident. Larkins maintained that Brown did not have a gun; that Officer Blackman shot Brown in the back after Brown ran away from the officer; and that after shooting Brown, Officer Blackman placed a gun in Brown's hand. Larkins claimed he did not know Brown before witnessing this incident and that when he attempted to tell police what he saw the night of the incident, he was told to keep his mouth shut unless he wanted to be arrested too. Brown also noted that the gun which was supposedly recovered from his possession originally belonged to another police officer, Officer Rickey Fobbs, and that while Officer Fobbs reported it stolen a few years before the shooting, Brown posited that the weapon was not really stolen, but instead became the drop weapon used by Officer Blackman.

A state court jury rejected Brown's version of events by convicting him of multiple counts of aggravated assault, aggravated unlawful use of a weapon, and unlawful

possession of a weapon by a felon based on his encounter with Officer Blackman. Brown appealed his state court conviction. The state appellate court affirmed and the Illinois Supreme Court denied Brown's petition for review. Brown then filed a habeas corpus petition in federal court, but the district court dismissed that suit because Brown was no longer in custody. Brown then filed this § 1983 suit against Officer Blackman and others. Brown's complaint alleged multiple theories against multiple defendants, but the only remaining claim at issue is Brown's excessive force claim against Officer Blackman. In his § 1983 suit, Brown reiterated his version of events, claiming that Officer Blackman shot him without justification and thus used excessive force in violation of his constitutional rights. The district court granted Officer Blackman summary judgment, concluding that Brown's excessive force claim was barred by collateral estoppel. Brown appeals.

## II.

On appeal, Brown argues that the district court erred in holding that his § 1983 claim was barred by collateral estoppel. Whether a plaintiff's § 1983 claim is barred by a state court conviction is determined by the state's rules of collateral estoppel. *See* 28 U.S.C. § 1738; *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1020 n. 9 (7th Cir. 2006).

> Under Illinois's issue preclusion law, an issue litigated in a prior proceeding may not be relitigated if (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior ad-

judication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Dunlap v. Nestle USA, Inc.*, 431 F.3d 1015, 1018 (7th Cir. 2005) (citing *Herzog v. Lexington Township,* 657 N.E.2d 926, 929-30 (Ill. 1995)). Moreover, under Illinois law, a criminal conviction precludes relitigation of issues that were necessarily decided in the criminal proceedings. *Am. Family Mut. Ins. Co. v. Savickas,* 739 N.E.2d 445, 449-51 (Ill. 2000). As the Illinois Supreme Court explained in *Savickas*, in a criminal case:

> [T]he State must prove the defendant guilty beyond a reasonable doubt by a unanimous verdict, a greater burden than that faced by any civil litigant. The defendant may remain silent and the State is prohibited from commenting on his silence. Moreover, the defendant has the right to counsel and to a record paid for by the State on appeal.

*Id.* at 450. These differences, the Illinois Supreme Court found, militate in favor of giving the same preclusive effect to a criminal conviction as an ordinary civil judgment. *Id.*

Brown admits that all of the elements of collateral estoppel exist in this case, *see* Appellant Brief at 22, and for good reason: Brown's conviction in state court for multiple counts of aggravated assault, aggravated unlawful use of a weapon, and unlawful possession of a weapon by a felon based on his encounter with Officer Blackman necessarily determined that Brown possessed a weapon and pointed it at Officer Blackman. None-

theless, Brown argues that collateral estoppel does not bar his excessive force claim for two reasons: first, because he was denied a full and fair hearing; and second, because new evidence calls into question his state court conviction, thus making application of collateral estoppel unfair.

Under Illinois law, collateral estoppel does not bar relitigation of an issue if the party against whom the doctrine is asserted was denied a full and fair opportunity to litigate the question in the previous case. *Rekhi v. Wildwood Ind., Inc.*, 61 F.3d 1313, 1319 (7th Cir. 1995) (explaining that under Illinois law a judicial finding will be given collateral estoppel effect only if reached after a full and fair hearing). Brown claims he was denied a full and fair hearing for three reasons. First, Brown claims he was denied a full and fair hearing because the state trial court limited his questioning of Officer Fobbs about the circumstances of the alleged theft of his gun (which was the gun Officer Blackman claimed he recovered from Brown). Brown's theory was that Officer Fobbs's gun was not really stolen, but rather that Officer Fobbs had to dispose of the weapon because he had used it in an off-duty shooting that occurred when Officer Fobbs was involved in a high-speed chase with a friend who was a convicted felon and gang member. Brown wanted to use this evidence to support his theory that Officer Fobbs supplied the weapon Officer Blackman would later use as a drop weapon. The state trial court refused to allow Brown to present this evidence because Brown did not have any evidence indicating that Officer Fobbs and Officer Blackman knew each other prior to the time of the shooting. The state court's refusal to allow this

evidence did not deny Brown a full and fair hearing. Rather, a state court could reasonably conclude that this evidence should be excluded because any probative value was slight, given there was no evidence that before the shooting they knew each other.[1] In addition, the danger of unfair prejudice was great since it would cast aspersions on the character of one of the government witnesses by alleging he was friends with a gang member and felon. *See United States v. Alviar*, 573 F.3d 526, 536 (7th Cir. 2009) (stating that "[w]e have recognized there is substantial risk of unfair prejudice attached to gang affiliation evidence . . . ."). There are circumstances under which it is proper to provide evidence of gang affiliations. *Id.* However, in this case,

---

[1] Brown claims on appeal that there was circumstantial evidence that Officers Fobbs and Blackman knew each other. Specifically, Brown points to evidence that Officer Fobbs was assigned to the 18th District Police Station, which was located only blocks from Cabrini-Green where Officer Blackman patrolled, and that officers from the two squads often interacted. Brown also points to the fact that Officer Fobbs was later transferred to Officer Blackman's unit and they then became friends. This evidence, however, in no way shows that the two knew each other at the time of the incident, much less three years earlier when the gun was stolen. Brown also points to Officer Blackman's testimony at trial that he met Officer Fobbs in "2000 maybe." The "maybe" is significant, as Officer Blackman immediately clarified that it was not until 2001 after the incident that he met Officer Fobbs. Thus, this testimony was also insufficient to show that Officer Blackman and Officer Fobbs knew each other at the time of the incident.

since there was no evidence that Officer Blackman and Officer Fobbs knew each other at or before the time of the April 24, 2001, shooting (much less that they knew each other three years earlier at the time of Officer Fobbs's alleged connection with the gang member), the exclusion of that testimony in Brown's criminal trial did not deny Brown a full and fair hearing.

Second, Brown argues that he was denied a full and fair hearing because he was not allowed to question Officer Blackman and his partner, Officer Long, about their "conspiracy" while on duty to switch price tags on merchandise at Sak's Fifth Avenue. The state trial court, however, allowed Brown to present evidence that a complaint was lodged against Officers Blackman and Long for a December 24, 2002, incident, that the Internal Affairs commission had reviewed and sustained those complaints, and that as a result of the incident both officers had been stripped of their police powers and had been reassigned to a non-emergency call center in an administrative capacity. Additionally, the state trial court allowed Brown to inquire regarding the total number of complaints logged against both Officer Blackman and Officer Long. This evidence was more than sufficient to inform the jury that Officers Blackman and Long had engaged in professional misconduct together; omitting the details of the price-tag scheme did not deprive Brown of a full and fair hearing.[2]

---

[2] On appeal, Brown argues that the limits on his questioning of the officers violated his Sixth Amendment right to con-
(continued...)

Third, and finally, Brown claims that he was denied a full and fair hearing because the prosecutor said that "they" (meaning Brown and his attorney) had "concocted" a conspiracy so that "they" could "cash in" against the City of Chicago in a civil action against the "officers" and that "they" were "trying to ruin the lives and careers of Chicago policemen who risk their lives every day." On appeal from his criminal conviction, the state appellate court held that these remarks were improper but did not require reversal. Similarly, here, while the remarks were improper because they attacked Brown's attorney, the error was not so great as to deny Brown a full and fair hearing.

In addition to claiming that he was denied a full and fair hearing, Brown also argues that it would be

---

[2] (...continued)
frontation which violated his due process rights, thereby denying him a full and fair hearing as required under Illinois law for the doctrine of collateral estoppel to apply. We need not decide whether the constitutional mandates governing criminal trials must be met in order for the doctrine of collateral estoppel to bar a subsequent civil case because there was no Confrontation Clause problem in the first instance. "The right to cross-examine is not unlimited; the Confrontation Clause guarantees only effective cross-examination, not cross-examination of any type sought by the defendant." *United States v. Williamson*, 202 F.3d 974, 977 (7th Cir. 2000) (citing *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985)). Brown had ample opportunity to effectively cross-examine the officers in his criminal trial, and thus his Confrontation Clause rights were not violated.

inequitable to apply the doctrine of collateral estoppel because new evidence calls into question his prior criminal conviction. Under Illinois law, the doctrine of collateral estoppel does not apply if it results in an injustice. *Jones v. City of Alton, Ill.,* 757 F.2d 878, 885 (7th Cir. 1985) (citing *Fred Olson Motor Serv. v. Container Corp. of America,* 401 N.E.2d 1098 (Ill. App. Ct. 1980)).

In arguing that it would be inequitable to apply collateral estoppel, Brown first claims that since his criminal trial he has obtained evidence that Brooks was actually engaged in drug transactions with Grant at the time of the incident and was not merely an innocent bystander. Specifically, Brown points to Brooks's deposition testimony provided in this case, wherein Brooks stated that he had handed money to Grant or drugs to customers. In his deposition, though, Brooks also maintained that he was merely "hanging out with my god brother" who was dealing drugs and that he (Brooks) wasn't "transacting drug deals." In Brown's state criminal trial, Brooks testified that he "wasn't doing anything . . . except talking to Lazerek Grant." Brown claims this deposition testimony now calls into question Brooks's previous testimony and also posits that the prosecutor concealed the actual facts of Brooks's involvement in the drug transaction. Brown argues that it would be unfair to bar his current civil case in light of this discrepancy. Brooks's deposition testimony sheds more light on his conduct on the night of the shooting. But in the state criminal trial, Brown's attorney argued to the jury that Brooks was involved in the drug deal and was not charged, stating in closing argument: "Jeremiah Brooks

is the most important witness in this case[.] A guy who gets caught dealing drugs and is told you sign this statement you'll get out of jail. That's their most important witness?" In fact, when the government objected to this statement, arguing it was "not based on the evidence," the trial judge responded "[t]he jury has heard the evidence. They will decide what inferences to be drawn." The jury nonetheless convicted Brown. Given the cross-examination and closing argument, coupled with the fact that Brooks continues to maintain that he "wasn't transacting drug deals," we do not see the discrepancy in the testimony being so great as to create an injustice.

Brown further claims he obtained new evidence during the deposition of Officer Fobbs which shows that Officers Fobbs and Blackman knew each other. The evidence Brown points to, however, is merely testimony by Officer Fobbs that even though he was not assigned to Cabrini-Green, he responded to calls there on a daily basis and officers from his police station often interacted with officers assigned to Cabrini-Green. This "new" evidence, however, does not establish an acquaintanceship between the two officers and therefore does not serve as a basis to ignore the preclusive effect of the state court conviction.

### III.

Brown and Officer Blackman maintain two diametrically opposed stories of the April 2001 shooting. A state court criminal jury, however, believed Officer Blackman's version following a full and fair trial and

convicted Brown. This conviction conclusively estab-lished that Brown pointed a weapon at Officer Blackman. Accordingly, under Illinois collateral estoppel law, Brown's § 1983 claim against Officer Blackman for excessive force is barred. The judgment of the district court is therefore AFFIRMED.