# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 11-3428

JAMES WELLS,

*Plaintiff-Appellant*,

*v.*

JEFF COKER, in his Individual Capacity, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 3:08-cv-03302—**Sue E. Myerscough**, *Judge.*

ARGUED JULY 11, 2012—DECIDED FEBRUARY 12, 2013

Before POSNER, MANION, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* At around midnight on January 1, 2008, James Wells decided to celebrate New Year's Eve by shooting his gun into the air from his back porch. His celebration ended when Officer Jeffrey Coker of the Springfield, Illinois, Police Department shot him three times. What transpired in the moments between those two events is at the heart of this case.

Wells pleaded guilty to reckless conduct for his actions on that night. The charge to which he entered a guilty plea stated that he "discharged a firearm multiple times . . . and then pointed the firearm at [Coker]." Prior to entering this guilty plea, Wells sued Coker and his employer, the City of Springfield, alleging that Coker used excessive force in shooting Wells. Coker contends that his force was reasonable under the Fourth Amendment and state law because Wells pointed his gun at him. The district court granted summary judgment to the defendants after determining that Wells was judicially estopped from denying that he had pointed the gun at Coker because Wells pleaded guilty to a charge that included the statement that he had pointed the gun at Coker. Because neither judicial estoppel nor other doctrines of preclusion apply to the particular facts of Wells's plea agreement, we reverse the district court's order.

## I. Background

The factual background for this appeal is deceptively simple. The parties agree that Wells shot his gun into the air several times to celebrate the New Year of 2008. They also agree that, after arriving at the scene to investigate the gunfire, Coker shot Wells three times, seriously injuring Wells. The only material fact in dispute is whether Wells pointed his gun at Coker before Coker fired at Wells. Coker claims that Wells turned toward him and pointed a gun in his direction, whereas Wells denies doing so.

On January 30, 2008, the Sangamon County State's Attorney's Office filed an information charging Wells with reckless discharge of a firearm, a felony, and stated that he "endangered the bodily safety of an individual in that, while acting in a reckless manner, he discharged a firearm multiple times." On August 11, 2009, the State's Attorney filed a second count against Wells, charging him with reckless conduct, a misdemeanor. This second count alleged that Wells "endangered the bodily safety of individuals in that, while acting in a reckless manner, he discharged a firearm multiple times . . . *and then* pointed the firearm at Officer Jeff Coker" (emphasis added). *See* 720 ILCS 5/12-5(a)(1) ("A person commits reckless conduct when he or she . . . recklessly performs an act or acts that cause bodily harm to or endanger the safety of another person"). Either of these two factual bases—discharging a gun in a residential neighborhood or pointing a gun at Coker—would have been sufficient, standing alone, to support a guilty plea for reckless conduct. Through an agreement with the State to dismiss the felony count, Wells pleaded guilty to this second count on that same day, following a plea hearing during which the court recited the terms of this second count to Wells, who replied by agreeing that he understood the charge and all possible penalties. Wells's lawyer was present during this plea hearing. The transcript of the guilty plea hearing (which Wells introduced in opposition to the State's summary judgment motion) shows that the discussion of the facts supporting the charge was brief and that Wells's guilty plea was not specific

with respect to whether he was admitting to shooting the firearm, pointing it at Coker, or both:

> The Court: All right, in Count II, Mr. Wells, you're charged with the offense of Reckless Conduct. It's alleged that on or about the 1st day of January, 2008, within Sangamon County, that you endangered the bodily safety of individuals in that, while acting in a reckless manner, you discharged a firearm in the air multiple times in a residential neighborhood while celebrating New Year's Eve and then pointed the firearm at Officer Jeff Coker of the Springfield Police Department.
>
> As charged, it's a Class A misdemeanor punishable up to a year in jail, $2,500 fine, and you could be sentenced to probation, conditional discharge or periodic imprisonment.
>
> Do you understand the charge in Count II and all of the possible penalties for a Class A misdemeanor?
>
> Wells: Yes.
>
> . . .
>
> The Court: How do you plead to the charge of Reckless Conduct, a Class A misdemeanor, in Count II?

Wells:          Guilty.

During the period between the filing of the first and second criminal charge, Wells brought a civil rights action under 42 U.S.C. § 1983 against Coker, alleging that Coker's decision to shoot Wells violated Wells's constitutional rights. Wells also sued the City of Springfield under a *Monell* custom or policy theory, *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and included some state tort law claims as well.[1] The defendants moved for summary judgment on May 20, 2011, arguing that, since the charge to which Wells pleaded guilty stated that Wells pointed a loaded gun at Coker, Coker's use of deadly force in response was justified. In response, Wells denied aiming his gun at Coker. But he admitted that after he shot several rounds in the air, his gun still contained a few rounds of ammunition.

In litigating the motion for summary judgment, the parties also disputed the legal significance of Wells's guilty plea for reckless conduct. The defendants argued that Wells admitted to pointing his gun at Coker when he pleaded guilty in 2009 to recklessly endangering the safety of another person that New Year's Eve. They observed that the information to which he pleaded guilty alleged that Wells had "discharged a firearm in

---

[1] These claims, however, require no separate discussion—either by the district court in considering the defendants' motion or on appeal—because the judgment was based entirely on whether Wells could contest that he pointed a gun at Coker.

the air multiple times in a residential neighborhood while celebrating New Year's Eve and then pointed the firearm at Officer Jeff Coker." Wells responded that he pleaded guilty to only the offense of reckless conduct, not to the facts in the information.

The district court granted summary judgment for the defendants on all counts. The district court concluded that Wells had admitted that he had pointed his gun at Coker when he pleaded guilty to the charge of reckless conduct, and that Wells was therefore judicially estopped from denying that he had pointed his gun at Coker. Thus, the district court reasoned, it was undisputed that Wells had pointed his gun at Coker and Coker's use of force was objectively reasonable. The district court conceded that if Wells had not been bound by the admission, the question of whether Wells had pointed his gun at Coker would have been disputed, and summary judgment therefore would have been inappropriate.

On appeal, Wells argues that the district court erred by applying judicial estoppel. He reasons that, in pleading guilty to reckless conduct, he did not admit that he had pointed a gun at Coker. That allegation, he contends, was superfluous to the charge that by discharging his gun overhead he committed reckless conduct. As a result, he concludes, he may and does dispute whether he pointed a loaded gun at Coker, so summary judgment was inappropriate.

## II. Discussion

### A. Legal Standard

We review a grant of summary judgment de novo. *Repa v. Roadway Express, Inc.*, 477 F.3d 938, 940 (7th Cir. 2007). Summary judgment is appropriate where "the pleadings and submissions in the record indicate the absence of any genuine issues of material fact, such that the moving party is entitled to judgment as a matter of law." *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 839 (7th Cir. 2011). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a grant of summary judgment, we construe the facts in the non-movant's favor. *Kuhn v. Goodlow*, 678 F.3d 552, 555 (7th Cir. 2012).

### B. Judicial Estoppel

In determining whether Wells is judicially estopped from denying pointing the gun at Coker, we apply federal law concerning judicial estoppel. The Full Faith and Credit Clause of the U.S. Constitution and 28 U.S.C. § 1738 require a federal court to give a state judgment the same effect it would have in state court, which typically requires the federal court to apply state law concerning preclusion doctrines. *See, e.g., Chi. Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011). Judicial estoppel, however, "is not part of the law of judgments in Illinois so much

as it is a rule of evidence or pleading." *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1550 (7th Cir. 1990) (citation omitted). Thus, federal law applies. *Id.*

The doctrine of judicial estoppel prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). In determining whether a party is judicially estopped from raising an argument, we examine three factors: (i) whether the party's positions in the two litigations are clearly inconsistent; (ii) whether the party successfully persuaded a court to accept its earlier position; and (iii) whether the party would derive an unfair advantage if not judicially estopped. *Id.* at 750-51; *see also United States v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003). In addition, to qualify as a judicial admission, a statement also must be "deliberate, clear, and unambiguous." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010).

We need not reach this test, however, since Wells did not "prevail" in his criminal case. After pleading guilty to reckless conduct, Wells was sentenced to two years of probation and two days in jail. At best, perhaps one could say that Wells "prevailed" in the sense that he avoided a trial for reckless discharge of a firearm, a felony for which Wells, if convicted, likely would have received a more onerous sentence. But this argument is specious. After all, Wells could have been acquitted had he gone to trial on the felony charge. Moreover,

the State also benefitted from its compromise with Wells, trading the uncertainty of a jury trial for a known outcome while conserving prosecutorial resources. Given the compromise nature of this plea agreement, referring to Wells as the prevailing party is a bridge too far.

Although we have applied judicial estoppel to arguments made in prior proceedings where there was no definitive winner or loser, we do not do so in this particular case, where the disposition involved a criminal conviction. In *Kale v. Obuchowski*, we held that the appellant was judicially estopped from claiming that he owned certain assets during a business dispute, when he had denied owning them during an earlier divorce proceeding. 985 F.2d 360, 361-62 (7th Cir. 1993). That divorce proceeding was resolved with a court-approved divorce settlement. *Id.* at 361. As with Wells's plea agreement, neither party to that divorce settlement won all that it had desired. But the similarities end there. Even though Mr. Kale did not strictly "prevail" in his divorce, he received a highly favorable settlement. This court characterized him as having "triumph[ed] by inducing [his] opponent[] to surrender." *Id.* at 362. In the instant case, one can hardly say that Wells "triumph[ed]." Given this important difference between *Kale* and Wells's appeal, we decline to extend our decision in *Kale* to the circumstances here.[2]

---

[2] While some of our sister circuits have applied judicial estoppel to guilty pleas in specific instances following highly

(continued...)

**C. Issue Preclusion**

Neither does the doctrine of issue preclusion prevent Wells from contesting whether he pointed a gun at Coker. We apply Illinois law concerning issue preclusion to determine whether Wells's state court conviction collaterally estops him from pursuing a § 1983 claim. *See Brown v. City of Chicago*, 599 F.3d 772, 774 (7th Cir. 2010). In Illinois, a litigant is estopped from raising an issue in a collateral proceeding when the following four factors are met: "(1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issue was necessary to the court's judgments, and (4) those issues are identical to issues raised in the subsequent suit." *Wozniak v. DuPage County*, 845 F.2d 677, 682-83 (7th Cir. 1988) (quotation marks and citation omitted); *accord Talarico v. Dunlap*, 667 N.E.2d 570, 572 (Ill. App. Ct. 1996), *aff'd*, 685 N.E.2d 325 (Ill. 1997).

In Wells's case, the third factor plainly is not met. According to the second count filed in Wells's criminal case, Wells *both* discharged his gun in the air *and* pointed

---

[2]  (...continued)

fact-dependent analyses, *see, e.g.*, *Bradford v. Wiggins*, 516 F.3d 1189, 1195 (10th Cir. 2008); *Thore v. Howe*, 466 F.3d 173, 185 (1st Cir. 2006); *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996), we do not believe that the facts concerning Wells's plea agreement and plea colloquy warrant the same treatment.

the gun at Coker. Either of these actions, taken in isolation, would have supported Wells's guilty plea for reckless conduct. Therefore, the resolution of the issue of whether Wells pointed his gun at Coker was not necessary to the judgment in the earlier criminal case.

At first glance, it may seem peculiar that, where each of two alternative factual bases would be sufficient to support a guilty plea but neither is necessary, this indeterminacy means that neither of the two bases can bind a party in subsequent litigation, even where the party agrees that at least one of these two bases was necessary. Illinois courts, however, read the "necessary for the judgment" factor literally. For instance, in *Kessinger v. Grefco, Inc.*, the Illinois Supreme Court stated:

> To operate as an estoppel by verdict it is *absolutely necessary* that there shall have been a finding of a specific fact in the former judgment or record that is *material and controlling* in that case and also *material and controlling* in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily determined . . . . *If there is any uncertainty on the point that more than one distinct issue of fact is presented to the court the estoppel will not be applied*, for the reason that the court may have decided upon one of the other issues of fact.

672 N.E.2d 1149, 1156 (Ill. 1996) (emphases added) (quotation marks and citations omitted). Given this strict standard, Illinois courts will not apply collateral estoppel where there are multiple independent bases that could

be sufficient to support the outcome in an earlier case, with it being "impossible to determine on which issue the plaintiff prevailed*." Herzog v. Lexington Township*, 657 N.E.2d 926, 931 (Ill. 1995). The strong language in *Kessinger* leaves no gray area concerning when issue preclusion applies. When there is "any uncertainty" regarding whether a specific factual finding was "absolutely necessary," issue preclusion does not apply. Since the issue of whether Wells pointed a gun at Coker was not controlling or necessary to the disposition of Wells's criminal case, the doctrine of issue preclusion does not apply.

**D.  Illinois Courts' General Practice**

In determining how to treat facts that underlie a guilty plea in a subsequent proceeding, we also examine the general practice of Illinois courts. If Illinois courts would give preclusive effect to Wells's earlier plea agreement, then we are required to do the same. *See Haring v. Prosise*, 462 U.S. 306, 308 (1983). In certain circumstances, Illinois courts will give prior guilty pleas preclusive effect in later litigation, without expressly invoking judicial estoppel, issue preclusion, or some other doctrine of preclusion. *See, e.g., In re Callas*, 411 N.E.2d 273, 277 (Ill. 1980) (an attorney's guilty plea for an offense involving moral turpitude is conclusive evidence of guilt in a later professional disciplinary proceeding). Therefore, we examine whether Illinois courts' general practice in similar cases—apart from those cases applying traditional doctrines of preclusion, which

we have already discussed—can offer guidance to this court.

Before discussing Illinois courts' general practice, we note that we are interested in these courts' treatment of a guilty plea in a prior case, not of a conviction following a trial in a prior case. *See Smith v. Sheahan*, 959 F. Supp. 841, 843 (N.D. Ill. 1997) (noting that Illinois courts are inconsistent with respect to whether there is a distinction between the conclusive effect of a guilty plea and the conclusive effect of a conviction following a trial). We also note that we are not concerned merely with whether Illinois allows for the introduction of a guilty plea in an earlier case as evidence in subsequent litigation. The answer to that question, in almost all circumstances, is yes. *See id.* at 842-47 (providing an overview of Illinois practice in this area). Instead, the focus of our inquiry is whether a prior guilty plea provides *conclusive* evidence of the underlying facts in the plea, which would make summary judgment appropriate in this case, rather than prima facie evidence, which may be refuted.

In past surveys of Illinois caselaw, we have come to conflicting conclusions regarding the treatment of facts that underlie a guilty plea in a criminal case, where those facts are relevant to a subsequent civil proceeding. In *Brown v. Green*, we cited the Illinois case *Smith v. Andrews* for the proposition that "Illinois courts have traditionally treated the guilty plea as an admission by the defendant of the facts alleged in the complaint that may be used against the defendant in a subsequent pro-

ceeding." 738 F.2d 202, 206 (7th Cir. 1984) (citing *Smith v. Andrews*, 203 N.E.2d 160, 163-64 (Ill. App. Ct. 1964); *see also Rodriguez v. Schweiger*, 796 F.2d 930, 933 (7th Cir. 1986) (citing *Brown* and *Andrews* for the same proposition[3]). *Andrews*, however, explained simply that a guilty plea to a robbery charge "is an admission which may be received against [the defendant] in a subsequent proceeding," and it "would be sufficient, especially when uncontradicted, to support the finding that the defendant had in fact committed a robbery." 203 N.E.2d at 163-64. Wells's situation is starkly different. Whereas the fact to be established in *Andrews* was simply that the party had committed a crime to which he later pleaded guilty, the matter at issue here is not whether Wells engaged in reckless conduct. Rather, a predicate fact—whether Wells pointed his gun at Coker—is at issue in this case.

A separate strand of Illinois caselaw indicates that a guilty plea in an earlier criminal case is admissible as prima facie evidence in a later civil case. *See O'Dell v. Dowd*, 429 N.E.2d 548, 551 (Ill. App. Ct. 1981). As such, this caselaw considers evidence related to an earlier guilty plea to be rebuttable; it may be "explained and contradicted." *Id.*; *see also Country Mut. Ins. Co. v. Duncan*,

---

[3] *Rodriguez* also cites *Thornton v. Paul* for a similar proposition, when in fact *Thornton* expressly declined to consider the effect of a guilty plea in a later proceeding. 384 N.E.2d 335, 342 (Ill. 1978), *overruled by Am. Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445 (Ill. 2000).

794 F.2d 1211, 1215 (7th Cir. 1986) ("A guilty plea, like any other admission, is not necessarily conclusive as to the facts underlying the plea but is subject to explanation by the declarant."); *Sheahan*, 959 F. Supp. at 846 ("Illinois law is clear that a guilty plea itself is an admission that may be considered with other evidence."); *Barnes v. Croston*, 247 N.E.2d 1, 3 (Ill. App. Ct. 1969) ("[A] guilty plea is admissible in a subsequent civil action against defendant . . . subject to explanation and contradictions and may be received, weighed, and considered by the jury in connection with all of the other evidence in the case."). In *Country Mutual*, we stated that, while "there is no Illinois Supreme Court ruling explicitly on the admissibility of guilty pleas, a substantial number of Illinois appellate courts and federal courts sitting in diversity have held that a guilty plea is introduced into evidence as an admission against interest." 794 F.2d at 1214-15. Like other admissions, a guilty plea in a previous case "is not necessarily conclusive as to the facts underlying the plea but is subject to explanation by the declarant" in a later civil action. *Id.* at 1215.

Given this conflicting caselaw, it is apparent that Illinois law does not have a consistent, general practice—aside from the traditional doctrines of preclusion—that is applicable to these circumstances. As we have explained, neither do the doctrines of judicial estoppel or issue preclusion apply. Accordingly, we conclude that the district court erred in granting the defendants' motion for summary judgment. Wells

should be given the opportunity to contest or otherwise explain the facts that underlie his guilty plea.


### III. Conclusion

Since the question of whether Wells pointed a gun at Coker constitutes a genuine issue of material fact, we REVERSE the judgment, and REMAND the case for proceedings consistent with this opinion.