_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 04--MR--625 |
| | ) | |
| DANIEL KOVAR, THE ESTATE | ) | |
| OF CHRISTOPHER B. KOVAR, | ) | |
| and ANTONIO G. ESTEPHAN, | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

_____

JUSTICE McLAREN delivered the opinion of the court:

In American Family Mutual Insurance Co. v. Savickas, 193 Ill. 2d 378 (2000), the Illinois Supreme Court held that a conviction of first degree murder estopped parties to a subsequent civil suit from claiming that the shooting underlying the conviction was unintentional. The questions before us are whether Savickas applies when (1) there is no factual basis on which to conclude that the issue presented in the civil suit is identical to the issue decided in the criminal case; and, in any event, (2) there was no incentive to fully litigate the issue in the criminal case. The trial court found that it did, and accordingly it granted summary judgment to plaintiff, Allstate Insurance Company. Defendants--Antonio G. Estephan, Daniel Kovar, and the Estate of Christopher B. Kovar--appeal that decision. We reverse and remand.

## I. BACKGROUND

The evidence before the trial court was as follows. Estephan filed a complaint against, among others, William A. Eckert, Daniel Kovar, and the estate of Christopher Kovar, alleging that one of them had negligently waved a sharp object near Estephan, cutting him.[1] Alternatively, Estephan alleged that either Eckert or Daniel had negligently pushed Christopher into Estephan and that, as a result, Estephan was cut by a sharp object that Christopher was holding.

All of the parties to Estephan's suit were teenagers at the time of the incident. According to the complaint, Eckert and the Kovars were standing in front of the home of Eckert's stepfather when Estephan drove by. Eckert called out and Estephan stopped. Eckert and the Kovars, all of whom were intoxicated, approached Estephan's car. They were loud and argumentative. Soon, Estephan, Eckert, and the Kovars were pushing and shoving. Estephan claimed that Eckert and the Kovars initiated the pushing and shoving; then one of them produced a sharp object. Because of negligence, Estephan was cut.

The Kovars are covered by a homeowner's policy issued by Allstate. Pursuant to the policy, Allstate appointed counsel to represent the Kovars in Estephan's suit against them. However, Allstate later filed a complaint for declaratory judgment, arguing that an exclusion that it had written into the policy relieved Allstate of its obligation to defend and indemnify the Kovars. That exclusion states that injuries "intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person" are not covered by the policy.

---

[1]Before Estephan filed his complaint, Christopher Kovar was hit by a train and died. His death is unrelated to Estephan's suit.

Allstate then filed a motion for summary judgment in which it argued that there was no genuine issue of material fact as to whether what happened to Estephan was excluded from coverage.

Allstate filed only three items in supports of its motion. One of these was Estephan's complaint (which alleged negligence). The other two were a copy of the applicable insurance policy and a copy of a court order. The court order showed that Daniel had pleaded guilty to battery and been sentenced to one year of court supervision.[2] But it did not recite any of the facts underlying his plea. For example, it did not state when the alleged battery occurred. Nor did it mention what the battery had consisted of. Nevertheless, Allstate argued that, based on this order, the acts that led to Estephan's injury fell within the policy's exclusion. In support of its position, Allstate noted that Illinois courts--including the supreme court in Savickas--have held that, when a policy excludes

---

[2]To be precise, the court order stated "SENTENCE: 720 ILCS 5/12--3(a)(2) Battery (insulting or provoking) PGTWFG one year court supervision, 0 fine + court costs, 60 hours of public service Employment. Restitution reserved in the amount of $500 payable to the State's Attorneys office within 60 months no contact with Antonio Estephan." The trial court interpreted PGTWFG to mean "plea of guilty, trial waived, finding of guilty, one year of court supervision." That interpretation has not been challenged.

intentional acts, and an insured has been convicted of a crime involving intentional conduct, the exclusion applies. Allstate did not mention that these courts have held this only when the facts underlying the criminal conviction are the same as the facts underlying the civil suit.

The trial court granted Allstate's motion. In doing so, the court reasoned that the policy excluded intentional acts and criminal acts, that Daniel had pleaded guilty to battery, and that therefore the policy exclusion applied. The court further reasoned that battery involves an intentional act and that "the natural and ordinary consequences of intentionally or knowingly waving a sharp object in the vicinity of an individual is that that individual will be injured." Thus, the court concluded that, because of the conviction, Savickas mandated a finding that there was no genuine issue of material fact, and accordingly it granted summary judgment. The court did not explain how, in light of a complete absence of evidence on the subject, it concluded that Daniel's battery conviction involved intentionally or knowingly waving a sharp object.

Estephan and the Kovars filed a motion to reconsider. In support of their motion, they attached a transcript of a deposition Daniel had given in Estephan's civil suit. In that deposition, Daniel had testified that, on the night of the incident, his brother Eckert and he had been at a friend's house watching television. They arrived around nine in the evening and stayed for a few hours. During that time, Christopher and Eckert drank some beer, but Daniel did not recall how much, although he did say that, based on the amount of beer at the house, it could not have been a lot. He also said that neither Eckert nor Christopher was intoxicated.

Around midnight, Daniel, Christopher, and Eckert left and went to the home of Eckert's stepfather. When they arrived there, Eckert went inside to use the bathroom, and Daniel and Christopher stayed outside. Shortly after Eckert went inside, a car sped by. No one shouted anything toward the car, which disappeared around a corner at the end of the street.

Moments later, however, the car reappeared. It reversed back up the length of the street and stopped in front of the home of Eckert's stepfather. Daniel said he thought the car reversed because the driver "wanted to start a fight." When the car stopped in front of Daniel and Christopher, Daniel saw that there were three people in the car. The driver, Estephan, asked Daniel and Christopher if they "ha[d] a death wish." Daniel asked Estephan if he was talking to him. By this time, Eckert had returned from his trip to the bathroom. He said he knew Estephan and told Daniel not to worry.

Eckert, Daniel, and Christopher approached Estephan's car. Eckert told Estephan that Christopher and Daniel were his friends and told Estephan to relax. He asked Estephan what he was up to and Estephan said "nothing." Estephan said that he had been doing fine until "these punks"-- referring to Christopher and Daniel--"started shit." While Eckert leaned toward the car and talked to Estephan, Christopher stood to Eckert's right and Daniel rested his hand on the frame of the driver's-side door.

Although Eckert tried to calm Estephan down, Estephan continued his "verbal[] assault." At some point, Estephan grabbed Daniel's hand and yelled "[g]et him." One of Estephan's passengers kicked his door open and stood up. Daniel broke Estephan's grip and backed away. As he did, Estephan's passenger hurled an open beer bottle at Daniel's head. The bottle missed Daniel, but it splashed beer on his clothes. Meanwhile, Estephan got out of his car and Daniel saw that Estephan was bleeding. Daniel did not see what had caused the bleeding. At the time, Daniel said, he did not have any weapons on him and, to his knowledge, neither did Eckert or Christopher.

Daniel hurried to his car and jumped in. As he fumbled with the ignition, Estephan's passenger set upon him, kicking him in the face through the open car window. Despite this, Daniel managed to throw the car into drive and, with Christopher in the passenger's seat, Daniel took off for his parents' house. After Daniel and Christopher left, Christopher said "[t]hat kid was cut pretty

bad," and tossed a pocket knife out the car window. While Daniel later said that "everyone thought" his brother cut Estephan, he did not say that anyone--including himself--actually saw what happened to Estephan. For his part, Christopher never said that he cut Estephan. And Daniel did not notice any blood on his brother's clothes.

When Daniel and Christopher arrived at their parents' house, police were waiting. Daniel was arrested and charged with battery and consumption of alcohol by a minor. To avoid having a conviction show up on his record, Daniel said, he pleaded guilty to battery with the understanding that the conviction would be removed from his record if he complied with the terms of his plea agreement. As for his brother, Daniel said that he was not sure what Christopher was charged with, but that it was something in the nature of aggravated battery. Before he could be prosecuted, however, Christopher died.

Besides Daniel's deposition, no new evidence was presented to the trial court prior to its ruling on the motion to reconsider its grant of summary judgment for Allstate. In granting summary judgment, the trial court had found that, based on Daniel's conviction of battery, as a matter of law, the acts giving rise to Estephan's injuries came under the insurance policy's exclusion of intentional acts and criminal acts. At a hearing on the motion to reconsider, counsel for the Kovars pointed out, among other things, that the court had before it no evidence of the facts underlying the criminal conviction. The court asked whether there was a transcript explaining the basis of Daniel's guilty plea. Counsel replied that he did not know whether there was one, but that none was before the court. Thus, counsel argued, because there were no facts on which the court could determine that the issues presented in the two cases were identical, Savickas did not apply.

Allstate's counsel responded that Savickas applied regardless of the factual basis for the guilty plea. He stated: "Savickas and the Allstate policy preclude coverage whether Daniel Kovar

threw the first punch, grabbed the plaintiff, provided the gun, provided the knife, drove the getaway car, stood there and encouraged his coconspirators to commit this crime that the Court has already found occurred."

The court agreed, stating that battery was a criminal act and that "the natural and reasonable consequences to be expected from the criminal act of battery is that someone is injured to some degree." The court further stated that "the plea of guilty and the conviction *** take[] us out of the realm of an accident and preclude[] coverage." Accordingly, the court denied the motion to reconsider. Following that decision, Estephan and the Kovars filed these timely appeals, which we consolidated.

## II. ANALYSIS

### A. Motion to Strike

Before turning to the substance of this appeal, we must address Allstate's improper reliance on matters outside the record. A party may generally not rely on matters outside the record to support its position on appeal. See Rodriguez v. Sheriff's Merit Comm'n, 355 Ill. App. 3d 676, 680 (2005). When a party's brief fails to comply with this rule, we may strike the entire brief. In re Petition of Sanjuan-Moeller, 343 Ill. App. 3d 202, 204-05 (2003). Alternatively, we may simply disregard the inappropriate material. See Rodriguez, 355 Ill. App. 3d at 680.

Here, Allstate did not file in support of its motion for summary judgment a transcript of the criminal proceeding involving Daniel. After appeal was taken, Allstate filed a motion in which it asked this court for permission to supplement the record with a copy of that transcript. That motion was denied. Nevertheless, Allstate relies heavily on that transcript throughout its appellate brief. Pointing this out, Estephan and the Kovars filed a motion to strike Allstate's brief. Allstate

responded that, in order to meet the deadline for filing its brief, it had to mail that brief prior to our ruling on the motion to supplement the record.

There are two fatal flaws in this argument. First, and most importantly, it is totally irrelevant. The question before us is not whether Allstate has an excuse for improperly relying on matters outside the record. The question is only whether it relied on such matters. Thus, Allstate's argument is without merit. Second, this argument does not comport with the options available to a party in Allstate's position. When a party has filed a motion to supplement the record, and that motion has not been ruled on when the party's brief is due, the party has two choices. The first is to request an extension of time in which to file its brief; the second is to file its brief without the outside material. What the party may not do, however, is file a brief in which it relies on the outside material. All of that said, we choose not to strike Allstate's brief. Instead, we will simply disregard references to matters outside the record. However, we caution future litigants not to repeat Allstate's mistakes.

### B. The Insurance Policy

### 1. Standard of Review

The trial court granted summary judgment for Allstate, declaring that, as a matter of law, Allstate was not obligated under the insurance policy. We review the trial court's grant of summary judgment de novo. *Kevin's Towing, Inc. v. Thomas*, 351 Ill. App. 3d 540, 544 (2004). Summary judgment is proper when the pleadings, depositions, and other evidence on file reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Brown Brothers Harriman Trust Co., LLC v. Bennett*, 357 Ill. App. 3d 399, 402 (2005). On a motion for summary judgment, the moving party bears the initial burden of producing evidence that, if uncontradicted, entitles that party to judgment as a matter of law. See *Medow v. Flavin*, 336 Ill. App.

3d 20, 28 2002 . Only if the moving party puts forth such evidence does the burden shift to the nonmoving party to present some factual basis that would arguably entitle him or her to judgment. Wortel v. Somerset Industries, Inc., 331 Ill. App. 3d 895, 900 2002 . Whatever evidence is produced, and regardless of which party produces it, it must be viewed in a light most favorable to the nonmoving party and any doubts must be resolved in favor of that party. See Central Illinois Light Co. v. Home Insurance Co., 342 Ill. App. 3d 940, 962 2003 . This is because, on a motion for summary judgment, the burden of persuasion remains at all times with the moving party. See Hall v. Flowers, 343 Ill. App. 3d 462, 469 2003 .

### 2. Policy Construction

Unless they contravene public policy, the unambiguous terms of an insurance policy, like the unambiguous terms of contracts in general, must be applied as written. See Roberts v. Northland Insurance Co., 185 Ill. 2d 262, 266 1998 . Here, neither party seriously disputes the meaning of the policy exclusion on which Allstate relies. More importantly, there is no argument that the exclusion offends public policy, and the language of the exclusion is unambiguous. It states that Allstate is not obligated to defend or indemnify against claims of injuries caused by the intentional or criminal acts of its insureds. Thus, the question presented is whether, by introducing Daniel s plea, Allstate has established that Estephan s injuries were caused by an intentional or criminal act.

### 3. The Peppers Doctrine

Before considering the above issue further, it is necessary to briefly discuss what this case is not about. In addition to its argument based on Savickas, Allstate argues that, Savickas aside, summary judgment is appropriate. Specifically, Allstate argues that, based on the evidence now before us--including Daniel s deposition testimony--we can determine that, as a matter of law, Estephan s injuries were caused by an intentional or criminal act. While Allstate did not raise this argument in the trial court, this court may affirm on

any basis called for by the record. *Redland Insurance Co. v. Lerner*, 356 Ill. App. 3d 94, 98 2005 .

That said, we cannot affirm on the basis Allstate suggests. At this stage, this case is not about whether it may eventually be decided that Allstate is not obligated pursuant to the insurance policy. Instead, this case is about only whether Daniel s conviction, in and of itself, is sufficient to answer that question. Beyond this, any consideration of whether estephan s injuries were intentionally or criminally caused is not appropriate now. This is because, under the *Peppers* doctrine, it is generally inappropriate for a court considering a declaratory judgment action to decide issues of ultimate fact that could bind the parties to the underlying litigation. See *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 197 1976 . What *Savickas* apparently teaches is that, regardless of this general rule, a court may decide such matters in a declaratory judgment action if they have been conclusively established by, for example, an insured s conviction. Here, in the underlying litigation between the parties, estephan claims that Daniel, Christopher, and eckert were negligent and that, as a result, he was injured. A decision as to whether one of these individuals acted intentionally or criminally could quite obviously bind the parties to the underlying litigation. Therefore, it is inappropriate at this stage for us to go further than the question of whether, based on Daniel s conviction alone, we can conclude that estephan s injuries were intentionally or criminally caused.[3]

---

[3]Even if it were appropriate to undertake such an inquiry, Allstate probably would not prevail

on its motion for summary judgment. The only evidence that even comes close to describing what happened to Estephan is Daniel's deposition testimony. However, that testimony does not establish that Estephan's injury was caused by an intentional or criminal act. For example, Daniel testified that he did not know what had happened to Estephan. So even if it were now appropriate to go beyond Daniel's conviction, Allstate's motion would likely still fail.

### 4. Savickas

In Savickas, the Illinois Supreme Court held that, under certain circumstances, a criminal conviction may be conclusive in a subsequent civil litigation as to the issue of the criminal defendant's state of mind. Specifically, the criminal conviction may estop the parties from arguing that the acts underlying the conviction were not intentional. Savickas, 193 Ill. 2d at 385-86. However, this is no small thing. Application of estoppel in these circumstances deprives the parties to the civil litigation of the opportunity to litigate in that proceeding the issue of the criminal defendant's state of mind. Recognizing the seriousness of the matter, the supreme court in Savickas cautioned that "the court must evaluate a number of factors before deciding whether to allow estoppel in any given case. It will not always be correct to allow estoppel." Savickas, 193 Ill. 2d at 386.

The first set of these factors are the three so-called "threshold requirements." A court considering whether to give the conviction estoppel effect must at the outset determine that (1) the issue decided in the criminal case and the one presented in the civil case are identical; (2) there was a final judgment on the merits in the criminal case; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. Savickas, 193 Ill. 2d at 387. Additionally, even if the threshold requirements are met, it is not necessarily appropriate to apply estoppel. Rather, it will be appropriate to do so only if its application will not result in any unfairness. Savickas, 193 Ill. 2d at 388. To determine whether unfairness will result, a court must balance the need to limit litigation--a need vindicated by the application of estoppel--against a party's right to an adversarial proceeding in which he or she is accorded a full and fair opportunity to be heard--a right that could be vitiated by the application of estoppel. See Savickas, 193 Ill. 2d at

388.  In making this determination, the court may consider a party's incentive to litigate the issue in the first action.  Savickas, 193 Ill. 2d at 388.

Here, Allstate has not produced sufficient evidence to meet the Savickas test.  First, and most importantly, Allstate has presented no facts from which we can determine that the issue decided in the criminal case and the one presented in the civil case are identical.  In support of its motion for summary judgment, Allstate offered a certified copy of Daniel's conviction.  But this document does not recount any of the facts underlying the conviction.  The trial court apparently recognized the ambiguity; it asked whether there was a transcript of the criminal proceeding.  However, none was provided, and the trial court nevertheless granted Allstate's motion.  In light of the total lack of factual evidence offered by Allstate, the trial court's granting of the motion would seem to turn the summary judgment standard on its head, placing on the nonmovant the initial burden of producing enough evidence to establish a genuine factual issue, rather than on the movant to establish an absence of one.  In any event, regardless of the trial court's reasoning on this point, Allstate has produced absolutely no evidence to show that the issue decided in the criminal case was the same as the issue presented in the civil case.  Therefore, Allstate cannot satisfy the first threshold requirement under Savickas.  Cf. **Davila v. Yellow Cab Co., 333 Ill. App. 3d 592 2002** (identity requirement not satisfied where movant claimed that the plaintiff had been convicted of a crime, but failed to attach to the motion a copy of the conviction or a transcript of the criminal proceedings that led to it).

None of the cases on which Allstate relies undermines this conclusion.  For example, in Savickas itself, the evidence before the civil court showed that, in the criminal proceeding, the insured had been convicted of first degree murder for shooting the victim and that the insured "intended or expected" that the shooting would result in the victim's death.  Savickas, 193 Ill. 2d at

388. In the civil case, the plaintiff sought to establish that that same shooting had been negligent. Savickas, 193 Ill. 2d at 380-81. Thus, the supreme court was able to determine that the issue--i.e., the shooting of the victim by the insured--was identical. The court concluded that the determination in the criminal proceeding estopped the parties to the civil proceeding from arguing that the shooting was negligent. Savickas, 193 Ill. 2d at 388. Conversely, in the present case, we do not know what the facts of the criminal case were. Consequently, we cannot determine that the issue decided in the criminal case is the same as the issue presented in the civil case. The other cases cited by Allstate are distinguishable for the same reason. See *Prudential Property    Casualty Insurance Co. v. Kerwin, 215 Ill. App. 3d 1086  1991* (evidence presented in a declaratory judgment action showed that, in an earlier criminal proceeding, the insured was convicted of aggravated battery based on his intentional shooting of victim); Allstate Insurance Co. v. Carioto, 194 Ill. App. 3d 767 (1990) (evidence presented in a declaratory judgment action showed that, in an earlier criminal proceeding, the insured was convicted of attempted murder based on the fact that, after announcing that he intended to kill the victim, he stabbed the victim 15 to 17 times). In sum, Allstate has not satisfied the first Savickas threshold requirement.

Even assuming, arguendo, that Allstate could establish all of the threshold requirements, its motion would nevertheless fail. Under Savickas, once the party claiming collateral estoppel satisfies the threshold requirements, the court must determine whether it is fair to apply collateral estoppel. One inquiry in this regard is whether, in the earlier proceeding, the insured had an incentive to fully litigate the issue. Savickas, 193 Ill. 2d at 388. For example, in Savickas itself, the court found that the insured had an incentive in the earlier proceeding to litigate the issue of the victim's shooting, because, if convicted, he faced a harsh jail sentence. The court stated:

*It cannot seriously be questioned that he had a full incentive to litigate his criminal trial. Savickas was facing charges of first degree murder for the shooting death of his victim, a charge with a minimum penalty of 20 years imprisonment and a potential maximum penalty of 60 years imprisonment even in the absence of any aggravating factors.*" Savickas, 193 Ill. 2d at 389.

By contrast, in Talarico v. Dunlap, 177 Ill. 2d 185 (1997), the court found collateral estoppel inappropriate where the plaintiff had not had an incentive to previously fully litigate the issue to which the defendant sought to apply estoppel. The plaintiff had pleaded guilty to two counts of misdemeanor battery and had admitted that he acted intentionally and knowingly. Talarico, 177 Ill. 2d at 188. Thereafter, he filed a civil suit, alleging that medication, which the defendant had prescribed to him, had caused him to behave criminally. The defendant argued that the plaintiff's guilty plea estopped him from arguing that the medication had proximately caused his criminal behavior. Talarico, 177 Ill. 2d at 189. The supreme court rejected the defendant's argument. In support of its conclusion, the court noted that, in the criminal proceeding, the plaintiff had faced several serious charges, but, in exchange for a light sentence, had pleaded guilty to a lesser offense. Talarico, 177 Ill. 2d at 197. This fact, the court reasoned, undermined the conclusion that the plaintiff had had an incentive to litigate the issue in the earlier criminal proceeding. See Talarico, 177 Ill. 2d at 197.

Similarly, in the present case, it does not appear that Daniel had a strong incentive to litigate the battery issue in the earlier proceeding. Daniel himself said that he pleaded guilty only because doing so gave him the opportunity for a light sentence and a clean record. And Allstate has offered nothing to dispute this, save for, perhaps, its conclusory assertion that Daniel faced "a significant jail sentence" in the battery case. This is unconvincing in light of the actual facts of the case--including the fact that Daniel received a light sentence and the apparent promise of a clean record. In short,

then, it does not appear that Daniel had an incentive to fully litigate the battery issue in the criminal proceeding. Because he did not, estoppel is inappropriate. See *Metropolitan Property Casualty Insurance Co. v. Pittington*, No. 3--04--0119, slip op. at 13 (April 22, 2005), quoting Talarico, 177 Ill. 2d at 196 (collateral estoppel inappropriate, because insured, who had been charged with attempted murder and was given the chance to plead guilty to reckless conduct and did so, *had little incentive to continue the litigation in a struggle to the finish*).

To summarize, Allstate cannot establish the first threshold requirement under Savickas. Moreover, even if it could, and even if it could establish the remaining two threshold requirements, estoppel would still be inappropriate, because, in the criminal proceeding, Daniel did not have an incentive to fully litigate the battery issue. Accordingly, Allstate's motion for summary judgment should have been denied.

### III. CONCLUSION

For the reasons stated, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

KAPALA and GILLERAN JOHNSON, JJ., concur.