2023 IL App (3d) 220143

Opinion filed February 16, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| ERIE INSURANCE COMPANY and ERIE INSURANCE EXCHANGE, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0143 |
| THOMAS R. GIBBS, D.D.S., and ANTHONY ADAMS, | ) ) ) | Circuit No. 21-MR-394 |
| Defendants | ) ) | |
| (Thomas R. Gibbs, D.D.S., | ) ) | The Honorable Paul M. Fullerton, |
| Defendant-Appellant). | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Davenport and Hettel concurred in the judgment and opinion.

**OPINION**

¶ 1        In a separate criminal case, the defendant-appellant, Dr. Thomas Gibbs, stipulated to intentionally pushing defendant Anthony Adams, thereby injuring Adams's knee. Gibbs was subsequently found guilty of misdemeanor criminal battery and sentenced. Adams then filed a negligence action against Gibbs related to the incident.

¶ 2        The plaintiffs, Erie Insurance Company and Erie Insurance Exchange, filed a declaratory judgment action alleging that they had no duty to defend or indemnify Gibbs in the negligence action pursuant to the home insurance and umbrella policies Gibbs had with the plaintiffs. The plaintiffs filed a motion for summary judgment, which the circuit court granted after finding that the evidence conclusively established that Gibbs acted intentionally and, therefore, Gibbs's conduct was excluded from coverage by the policies. Gibbs appealed, alleging that the circuit court erred when it (1) denied his motion to stay the declaratory judgment action pending the resolution of the negligence action and (2) granted summary judgment in favor of Erie. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On April 19, 2021, Erie Insurance Company and Erie Insurance Exchange (hereinafter Erie) filed a civil complaint against Dr. Thomas Gibbs and Anthony Adams. The complaint, which was subsequently amended on July 26, 2021, sought a declaratory judgment that it did not owe Gibbs a duty to defend and indemnify in a negligence action filed by Adams against Gibbs.

¶ 5        The complaint alleged that on August 14, 2018, the Downers Grove Police Department responded to a call regarding a domestic dispute at Gibbs's residence. Gibbs was taken to Good Samaritan Hospital and found to have a 0.282 blood alcohol concentration. Hospital staff reported that Gibbs was aggressive and violent and that he was spitting at and verbally abusing the staff.

¶ 6        At approximately 5:37 a.m., nurse Megan Howard performed a routine check on Gibbs in his room. Gibbs said he was "getting out of here." Howard called for security, and Gibbs urinated on the floor. Gibbs then approached Howard and told her to get him "out of this f***

room." He also grabbed Howard's arm. At that time, Adams, who was an emergency room technician, came into the room to assist. Gibbs resisted and pushed Adams to the floor.

¶ 7 Two misdemeanor criminal battery cases were filed against Gibbs as a result of the hospital incident. In the first case, Du Page County circuit court case No. 18-CM-1790, the State alleged that Gibbs intentionally pushed Adams, thereby causing injury to Adams's left knee.[1] In the second case, Du Page County circuit court case No. 18-CM-1865, the State alleged that Gibbs grabbed and squeezed Howard's right forearm. On July 30, 2019, Gibbs was found guilty in both cases after he stipulated to the facts as alleged by the State.[2] There was no agreement on sentencing.

¶ 8 Additionally, the Erie complaint alleged that Gibbs pled guilty in a federal criminal fraud case on December 11, 2019. The complaint stated that, at sentencing on July 22, 2020, Gibbs addressed the court, stating that he had initially been offered pretrial diversion with probation and expungement of the charges after one year, but that offer had been revoked due to the state criminal battery cases. Gibbs stated, in part, that "[the offer] was no longer an option when I accepted responsibility for a misdemeanor battery charge that occurred on the night that my 41-year-marriage collapsed. I was taken drunk from my residence to the hospital."

¶ 9 The complaint also alleged that, on July 31, 2020, Adams filed a negligence action against Gibbs, alleging that Gibbs failed to (1) "drink in a reasonable manner," (2) "urinate in a reasonable manner," (3) "urinate in a reasonable location," and (4) "reasonably respond to plaintiff's attempts to help him." Adams's negligence action further alleged that Gibbs "[c]aused plaintiff to slip" and that he sustained severe and permanent injuries as a result.

---

[1] Documents in the record indicated that Adams suffered a broken kneecap.
[2] The record on appeal contains the transcript from the criminal battery cases; Gibbs's counsel clearly stated that Gibbs was stipulating to the facts but pleading not guilty.

¶ 10 Erie's complaint further stated that it had issued a general home insurance policy and an umbrella policy to Gibbs and his wife that was effective during the time the hospital incident took place. The general policy obligated Erie to "pay all sums up to the amount shown on the '*Declarations*' which '*anyone we protect*' becomes legally obligated to pay as damages because of '*bodily injury*' *** caused by an '*occurrence*' during the policy period." "Bodily injury" was defined as including physical harm. "Occurrence" was defined as "an accident, including continuous or repeated exposure to the same general harmful conditions."

¶ 11 The general policy excluded bodily injury that, *inter alia*, was "expected or intended" by the insured even if "the degree, kind or quality of the injury *** is different than what was expected or intended ***." It also excluded coverage for "claims or suits seeking damages, including defense of same, for any person who actively participates in any act of *** physical *** abuse of any person," excepting certain conduct not applicable in this case.

¶ 12 The umbrella policy obligated Erie to "pay the *ultimate net loss* which *anyone we protect* becomes legally obligated to pay as damages because of *personal injury* or *property damage* resulting from an *occurrence* during this policy period." "Personal injury" included "bodily injury," which the umbrella policy defined as including physical harm. "Occurrence" was defined in relevant part as "an accident *** which results in *personal injury* *** which is neither expected nor intended."

¶ 13 The umbrella policy contained exclusions for, *inter alia*, personal injury that the insured intended or that resulted from physical abuse by the insured.

¶ 14 Erie's complaint alleged that neither the general policy nor the umbrella policy provided coverage for at least the following reasons: (1) the facts did not allege an "occurrence," (2) the exclusion for intentional acts applied, and (3) the exclusion for physical abuse applied.

4

¶ 15          On August 20, 2021, Gibbs filed a motion for judgment on the pleadings or, in the alternative, to stay the declaratory judgment action pending judgment in the negligence action. In essence, Gibbs alleged that Erie was improperly asking the circuit court to make findings of fact in the negligence action that would ultimately determine Gibbs's liability in that action. Gibbs sought a ruling that Erie had a duty to defend him in the negligence action. Gibbs also argued that "[a]t an absolute minimum, this case should be stayed or dismissed pending resolution of the underlying Adams case."

¶ 16          Three days later, Adams also filed a motion to stay the declaratory judgment proceedings. In part, Adams's motion alleged that there was an undecided question as to whether Gibbs was so intoxicated that the exclusionary clauses from his policies would not apply.

¶ 17          On November 16, 2021, the circuit court held a hearing at which it heard arguments on whether the case should be stayed. The court refused to stay the case and gave Erie 28 days to file a cross-motion for judgment on the pleadings or a motion for summary judgment.

¶ 18          Erie filed a motion for summary judgment on December 14, 2021. In part, Erie's motion argued that Gibbs and Adams should be collaterally estopped from contesting Gibbs's convictions for criminal battery. Additionally, Erie's motion argued that because Gibbs's conduct was intentional, it (1) did not qualify as an "occurrence" under the policies and (2) triggered both the intentional act and physical abuse exclusions.

¶ 19          On March 10, 2022, the circuit court held a hearing on Gibbs's motion for judgment on the pleadings and Erie's motion for summary judgment. The parties addressed the applicability of collateral estoppel, with Erie arguing that it applied in that "the cause of Dr. Gibbs' unprovoked attack on Mr. Adams has already been determined." Erie also emphasized that Gibbs intentionally battered Adams and that the issue in the declaratory judgment action was identical

5

in that it alleged no duty to defend based on Gibbs's intentional conduct, which was the cause of Adams's injury. Gibbs argued that granting declaratory relief in favor of Erie would improperly decide material issues of fact for the negligence action. Gibbs also argued that there was no identity of issues between the criminal cases and the declaratory judgment action because intentional conduct exclusions are irrelevant to a negligence claim.

¶ 20 The circuit court noted that the law permitted it to look outside of the policies "when there's unusual circumstance involved." The court noted that Gibbs stipulated to the facts in the criminal cases, thereby "admitting that in the event these witnesses would come in to testify that these injuries occurred, he agreed, and that's why he was convicted." The court also found that collateral estoppel applied such that summary judgment in favor of Erie was appropriate. Concomitantly, the court denied Gibbs's motion for judgment on the pleadings.

¶ 21 Gibbs appealed from the circuit court's November 16, 2021, order on his motion to stay and on the court's March 10, 2022, final order.

¶ 22                                    II. ANALYSIS

¶ 23                                  A. Motion to Stay

¶ 24 Gibbs's first argument on appeal is that the circuit court erred when it denied his motion to stay the proceedings pending the outcome of the negligence action. Gibbs claims that the court "impermissibly interfered with a material issue of fact critical to the underlying case." More specifically, he contends that the court found that he intended to harm Adams, which was dispositive of the elements Adams needed to prove to be entitled to recovery in the negligence action.

¶ 25 The circuit court has the inherent authority to control the disposition of its cases. *Cullinan v. Fehrenbacher*, 2012 IL App (3d) 120005, ¶ 10. In exercising that authority, the court may

6

grant motions to stay after considering matters such as "the orderly administration of justice and judicial economy." *Pekin Insurance Co. v. Johnson-Downs Construction, Inc.*, 2017 IL App (3d) 160601, ¶ 10. We review a circuit court's decision on a motion to stay for an abuse of discretion. *Id.*

¶ 26    Generally, when a court is faced with a declaratory judgment action regarding an insurer's duty to defend, the court looks to the allegations in the underlying complaint and the relevant provisions contained in the policy. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). The duty to defend arises even if the facts of the underlying complaint only potentially fall within the ambit of the policy. *Id.*

¶ 27    However, our supreme court has clarified that a court is not limited to the underlying complaint when considering whether the duty to defend arises. *Id.* at 461-62. The insurer " 'may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions.' " *Id.* at 461 (quoting *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304 (1983)). In *Wilson*, our supreme court also quoted with emphasis the following statement from the *Envirodyne* court:

> " 'To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no more attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties.' " (Emphasis omitted.) *Id.* (quoting *Envirodyne*, 122 Ill. App. 3d at 305).

7

¶ 28    A limitation exists on the ability of the circuit court to consider such extrinsic evidence; however, it is not permitted " 'when it tends to determine an issue crucial to the determination of the underlying lawsuit.' " *Id.* (quoting *Envirodyne*, 122 Ill. 2d at 304-05). This limitation is commonly called the *Peppers* doctrine, stemming from our supreme court's decision in *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 197 (1976). The Second District offered a cogent explanation of the reason for the *Peppers* doctrine in *State Farm Fire & Casualty Co. v. John*, 2017 IL App (2d) 170193, ¶ 23:

> "The concern is that prematurely adjudicating such issues in the declaratory judgment action would result in collateral estoppel in the underlying litigation. [Citation.] The classic scenario is where an insured is sued and the allegations of the complaint potentially fall within the scope of the insurance policy, thus triggering the insurer's duty to defend, but the insurer denies coverage based on an intentional-injury exclusion in the policy. Courts have explained that, in such circumstances, the issue of the insured's intent should be litigated in the underlying tort action, not the declaratory judgment action."

¶ 29    In practice, however, extrinsic evidence from criminal convictions, including stipulations made in those cases, can be used in declaratory judgment actions to determine whether the duty to defend arises. See, *e.g.*, *Country Mutual Insurance Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 77; *Allstate Insurance Co. v. Carioto*, 194 Ill. App. 3d 767, 774-75 (1990). In *Dahms*, the First District noted that it need not turn a blind eye to the fact that "plaintiffs may have an incentive to draft pleadings in a way that triggers the defendant's insurance coverage." *Dahms*, 2016 IL App (1st) 141392, ¶ 47. Thus, the label used by a plaintiff in an underlying action is not dispositive.

8

"Even where a complaint alleges an act is 'negligent,' if the allegations show that what is truly alleged can only be characterized as an intentional act, the substance will control over the moniker placed on it by a plaintiff." *Id.*

¶ 30    In *Carioto*, the First District found that *conclusive* evidence of an insured's intent can arise from a criminal conviction in combination with judicial admissions made by the insured. *Carioto*, 194 Ill. App. 3d at 774-75. In that case, an insured had pled guilty to attempted murder after stabbing the victim 15 to 17 times. *Id.* at 770. While the insured was serving his prison sentence, the victim filed a negligence action against the insured, alleging intentional acts only. *Id.* at 771, 773. Several years later, however, the victim amended the complaint to allege negligent acts. *Id.* at 771. The *Carioto* court found the negligence allegations to be facetious, ruling that no controversy existed over whether the insured's actions were intentional. *Id.* at 775. In fact, the nature of the crime and the insured's judicial admission in a deposition that he acted intentionally provided conclusive evidence of intentional conduct for the *Carioto* court. *Id.* The court concluded that "we believe it is proper for a declaratory judgment court to decide the coverage issue before resolution of the tort action in the rare case, such as this one, where there is conclusive evidence that the insured acted intentionally." *Id.* at 776.

¶ 31    Ten years after *Carioto*, our supreme court decided *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378 (2000). In part, the *Savickas* court held that a criminal conviction "collaterally estops the retrial of issues in a later civil trial that were actually litigated in the criminal trial." (Internal quotation marks omitted.) *Id.* at 384; see also Restatement (Second) of Judgments § 85(2) (1982) (stating that issues determined in a criminal conviction have preclusive effect if the requirements for collateral estoppel are met).

¶ 32    In this case, the concerns underlying the *Peppers* doctrine are not present because, like the situation in *Carioto*, the insured here (Gibbs) was not only convicted of criminal battery, but he also (1) stipulated to the facts, *i.e.*, intentionally pushing Adams, thereby causing injury, and (2) further corroborated his intentionality in his federal criminal fraud case by stating he "accepted responsibility for a misdemeanor battery charge." Further, and more importantly, under *Savickas*, Gibbs's criminal conviction—in which the question of whether he acted intentionally was actually litigated—can have preclusive effect in the declaratory judgment action. *Savickas*, 193 Ill. 2d at 384. Under these circumstances, we hold that there was conclusive evidence of Gibbs's intentional conduct such that the circuit court could consider the extrinsic evidence and issue a decision in the declaratory judgment action. See *id.* Accordingly, we hold that the circuit court did not err when it denied Gibbs's motion to stay the declaratory judgment action pending the resolution of the negligence action.

¶ 33                              B. Summary Judgment

¶ 34    Gibbs's second argument on appeal is that the circuit court erred when it granted summary judgment in favor of Erie. Specifically, Gibbs argues that the elements of collateral estoppel have not been met and, even if they had been, an exception to the doctrine prevents its application in this case because he did not have an incentive to litigate the intentionality of his conduct in the misdemeanor criminal battery case.

¶ 35    Summary judgment is appropriate when the pleadings—together with the affidavits, depositions, and admissions on file—"show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). We review a circuit court's decision on summary judgment *de novo*. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17.

10

¶ 36    As we stated above, Illinois law allows a circuit court to decide a coverage issue in a declaratory judgment action before the underlying tort action is resolved, when conclusive evidence exists that the insured acted intentionally. *Dahms*, 2016 IL App (1st) 141392, ¶¶ 77-79; *Carioto*, 194 Ill. App. 3d at 776. Further, a criminal conviction can collaterally estop the retrial of any issues in a subsequent civil trial that were actually litigated in the criminal trial. *Savickas*, 193 Ill. 2d at 384. The remaining question for this court is whether the elements of collateral estoppel have in fact been met. *Id.* at 387.

¶ 37    The doctrine of collateral estoppel has three elements: (1) identity of issues between the former adjudication and the case at issue, (2) a final judgment must have been issued in the former adjudication, and (3) the party sought to be estopped must have been a party or in privity with the party from the former adjudication. *Id.* "Additionally, the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation." *Id.* There is no question in this case that elements two and three have been met. The only question is whether the first element has been met.

¶ 38    The fatal flaw in Gibbs's argument regarding the first element is that he claims there is no identity of issues between the misdemeanor criminal battery case and the *underlying* action. The correct analysis for collateral estoppel purposes, however, is between the misdemeanor criminal battery case and the *declaratory judgment* action.

¶ 39    It is clear that when the analysis is performed correctly, the identity-of-issues element is met in this case. The question of whether Gibbs acted intentionally was actually litigated in the criminal case alleging battery of Adams (case No. 18-CM-1790). Gibbs stipulated to the State's facts, which included the assertion that he intentionally pushed Adams, causing his injury, but

11

pled not guilty. The circuit court determined that Gibbs acted intentionally. Now, in this declaratory judgment action, Erie claims that it has no duty to defend in part because Gibbs acted intentionally, thereby triggering an exclusion for injuries to others caused by physical abuse on the part of the insured. Those issues are the same.

¶ 40     Having determined that the first element of collateral estoppel has been met, coupled with the fact that the other two elements are not contested, we now hold that collateral estoppel can apply in this case; the only question left to answer is whether it is fair to do so. See *Savickas*, 193 Ill. 2d at 388 (holding that "[e]ven when the threshold requirements are satisfied, the doctrine should not be applied unless it is clear that no unfairness will result to the party sought to be estopped").

¶ 41     Gibbs claims that it would be unfair to apply collateral estoppel in this case because he did not have an incentive to litigate the intentionality of his conduct in the criminal battery case. He states, "it is clear from the record that Gibbs stipulated to facts for the opportunity for a light sentence and a clean record considering his occupational status." He cites to two cases in support of his argument—*Talarico v. Dunlap*, 177 Ill. 2d 185 (1997), and *Allstate Insurance Co. v. Kovar*, 363 Ill. App. 3d 493 (2006). We will address those cases in turn.

¶ 42     In *Talarico*, on two dates in August 1986, Talarico shocked two people with a stun gun. *Talarico*, 177 Ill. 2d at 188. In the second incident, he also grabbed the victim's genitals and kissed him several times on the face. *Id.* As a result of the incidents, Talarico was charged with aggravated battery, aggravated unlawful restraint, armed violence, and aggravated criminal sexual abuse. *Id.* In a plea agreement, he pled guilty to two counts of misdemeanor criminal battery and stipulated to the facts of the crimes, admitting that he committed the crimes intentionally and without legal justification. *Id.*

12

¶ 43    After he received a pardon from the governor, Talarico filed a medical malpractice action against several parties, including the doctor who had prescribed acne medication to him. *Id.* at 188-89. The complaint alleged that the medication's side effects subjected Talarico to an unreasonable risk and that the defendants failed to properly monitor him. *Id.* at 189. The complaint further alleged that the defendants' failings resulted in the criminal activity for which Talarico had pled guilty. *Id.*

¶ 44    The circuit court granted summary judgment in favor of the defendants, who had argued that Talarico's guilty plea collaterally estopped him from arguing that his criminal conduct was caused by his acne medication. *Id.* The appellate court reversed. *Id.*

¶ 45    Our supreme court examined the applicability of collateral estoppel to the case. Because the three elements of the doctrine had been satisfied, the only question was whether the "incentive to litigate" exception applied. *Id.* at 193.

¶ 46    Of particular significance to the court's analysis was the fact that Talarico entered into a negotiated guilty plea. *Id.* at 195-96. In analyzing the circumstances of Talarico's plea, the court stated,

> "we conclude that only in the most technical sense was Talarico's guilty plea an admission that his criminal conduct was knowing and intentional. The record makes apparent that the plea was a compromise: never is it conceded that [the acne medication] was not the contributing factor to Talarico's criminal conduct." *Id.* at 196.

That fact, plus several others noted by the court, such as the significant reduction in charges and sentence, contributed to a finding that Talarico did not have full incentive to litigate the criminal offense such that collateral estoppel should not apply. *Id.* at 198.

¶ 47    Justice McMorrow dissented, commenting on how damaging she believed it was to our justice system that the majority would allow an individual to "deliberately and knowingly forfeit[ ] the opportunity to assert that his violent conduct was actually caused by a third party's negligence in prescribing acne medication" but then allow that individual to repudiate his admission of criminal intent in a civil case in an attempt to gain financially from his own criminal conduct. *Id.* at 200-01 (McMorrow, J., dissenting).

¶ 48    We find *Talarico* to be distinguishable. First, that case did not involve a declaratory judgment action like this case. Second, there is no question in this case about reduced culpability like there was with the acne medication in *Talarico*. Third, *Talarico* involved a negotiated guilty plea, while in this case Gibbs stipulated to the facts but still pled not guilty. In this regard, we note the *Talarico* court's statement that "[o]rdinarily, when a fact has been admitted by a litigant, it is reasonable to presume that the fact is established and that the fact should not be subject to relitigation. We do not believe, however, that the same may be said in every case of a *negotiated guilty plea*." (Emphasis added.) *Id.* at 195 (majority opinion). Fourth, *Talarico* was decided before *Savickas*, which, as we have already mentioned, held that a criminal conviction "collaterally estops the retrial of issues in a later civil trial that were actually litigated in the criminal trial." (Internal quotation marks omitted.) *Savickas*, 193 Ill. 2d at 384. For these reasons, *Talarico* is of little value to the disposition of this appeal.

¶ 49    Gibbs's citation to *Kovar* is similarly of no avail. In *Kovar*, a scuffle took place between William Eckert, Daniel Kovar, and Christopher Kovar on one side and Antonio Estephan and two unnamed individuals on the other side. *Kovar*, 363 Ill. App. 3d at 495. During the encounter, Estephan sustained a cut. *Id.* At some point thereafter, Estephan filed a negligence action against numerous defendants, including Eckert, Daniel, and the estate of Christopher, who had died

14

between the scuffle and the filing of Estephan's civil complaint. *Id.* The complaint alleged that one of the defendants had waved a sharp object near Estephan, which resulted in the cut. *Id.* Alternatively, the complaint alleged that either Eckert or Daniel had pushed Christopher into Estephan, who was cut by a sharp object being held by Christopher. *Id.*

¶ 50 Allstate Insurance Company, which had issued a homeowner's policy that covered the Kovars, filed a declaratory judgment action alleging it had no duty to defend the Kovars because the policy contained an exclusion for injuries " 'intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person.' " *Id.*

¶ 51 Allstate subsequently moved for summary judgment in the declaratory judgment action. *Id.* Attached to that motion was a copy of a court order that showed Daniel had pled guilty to battery. *Id.* at 496. No underlying facts were included in that court order. *Id.* The circuit court granted Allstate's motion for summary judgment. *Id.*

¶ 52 Attached to a motion to reconsider was Daniel's deposition, which had been taken in connection with the negligence action. *Id.* In his deposition, Daniel stated, *inter alia*, that he did not know how Estephan was cut. *Id.* at 497. He did not have any weapons on him and did not think Eckert or Christopher did, either. *Id.* When he and Christopher fled the scuffle in his vehicle, Christopher said, " '[t]hat kid was cut pretty bad.' " *Id.* Christopher then threw a pocket knife out the window. *Id.*

¶ 53 Daniel further stated, in his deposition, that he was charged with battery and consumption of alcohol by a minor in connection with the incident. *Id.* at 498. "To avoid having a conviction show up on his record, Daniel said, he pleaded guilty to battery with the understanding that the conviction would be removed from his record if he complied with the terms of his plea agreement." *Id.*

15

¶ 54        The circuit court denied the motion to reconsider, and both Estephan and the Kovars appealed. *Id.*

¶ 55        Regarding collateral estoppel, the Second District initially found that the doctrine's first element had not been met. *Id.* at 502. First, the *Kovar* court found that no facts underlying Daniel's conviction had been provided. *Id.* Thus, there was no basis to find that the issue decided in the criminal case was the same issue in question in the underlying negligence action. *Id.*

¶ 56        The *Kovar* court also found that, even if the three elements of collateral estoppel had been met, the doctrine still would not have applied because there was no incentive for Daniel to fully litigate the issue in the criminal case. *Id.* at 503. The court premised that finding on the fact that Daniel pled guilty only due to the opportunity for a light sentence and a clean record. *Id.* at 504.

¶ 57        We find *Kovar*, like *Talarico*, to be distinguishable. First, *Kovar* involved a negotiated guilty plea, unlike this case. Second, there was no identity of issues due to a dearth of facts surrounding Daniel's guilty plea. In this case, we know what occurred because Gibbs stipulated that he intentionally pushed Adams, thereby causing injury. Third, the entire discussion of whether it would be fair to apply collateral estoppel was *dicta*, as the case was decided on the first element of collateral estoppel not being met.

¶ 58        What we find particularly disingenuous about Gibbs's argument on this issue is that he *did* litigate the issue of his intent in the criminal battery case. He stipulated to the facts, but he still contested his guilt by pleading not guilty. Further, there was no agreement with the State regarding a reduced charge or sentence, so it cannot be reasonably argued that he stipulated to the facts to obtain a "light sentence" or "clean record," unlike the situation in *Kovar*. In that sense, this case is more analogous to *Savickas*, in which the insured went to trial on a first degree

16

murder charge and was convicted (*Savickas*, 193 Ill. 2d at 380). During the trial, the insured "admitted that the gun did not go off accidentally." *Id.* at 382. In addition, "[h]e testified to the effect that he intentionally pointed the gun at the decedent and intentionally pulled the trigger while the gun was so aimed." *Id.*

¶ 59       In *Savickas*, the court found that all three elements of collateral estoppel had been met and that Savickas' criminal conviction and judicial admissions constituted conclusive evidence of his intentionality. *Id.* at 388-89. The same has occurred in this case with Gibbs. Additionally, the *Savickas* court found no unfairness in applying collateral estoppel, as "Savickas had a full and fair opportunity to litigate all relevant issues in his criminal trial, and did so." *Id.* at 389. We find the same conclusion must be drawn in this case.

¶ 60       For the foregoing reasons, we hold that the circuit court did not err when it granted summary judgment in favor of Erie. Erie has no duty to defend and indemnify Gibbs in the underlying negligence action, based on the policies' exclusions related to intentional acts and physical abuse.

¶ 61       Lastly, we note that Gibbs has repeatedly argued in his brief that Erie is attempting to apply collateral estoppel to the underlying negligence action. Gibbs' argument is without merit. An excellent explanation of the resolution of a coverage issue in a declaratory judgment action can be found in *Dahms*. In *Dahms*, after the court found that it was appropriate to consider Dahms' criminal conviction in the declaratory judgment action, the court stated the following:

> "We are not prematurely deciding an issue in the underlying Tort Case. We are not determining whether Dahms's conduct was negligent versus intentional for purposes of the Tort Case. There is no issue of collateral estoppel caused by our ruling. Nor are we finding that Dahms committed a

17

criminal act; a jury already did that. We are just acknowledging the fact of his conviction and finding that, in light of that undisputed fact, a policy exclusion applies. Whatever preclusive effect Dahms's conviction may or may not have on the Tort Case is independent of anything we have said here." *Dahms*, 2016 IL App (1st) 141392, ¶ 78.

¶ 62 In other words, Gibbs's fear that a ruling on the coverage issue in this case will have preclusive effect in the negligence action is unfounded. See *id.*

¶ 63                                                  III. CONCLUSION

¶ 64 The judgment of the circuit court of Du Page County is affirmed.

¶ 65 Affirmed.

*Erie Insurance Co. v. Gibbs*, 2023 IL App (3d) 220143

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 21-MR-394; the Hon. Paul Fullerton, Judge, presiding. |
| **Attorneys for Appellant:** | Christopher J. Pickett, Peter G. Syregelas, and Haley M. Loutfy, of Lindsay, Pickett & Postel, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Douglas M. DeWitt and David C. Butman, of Hinkhouse Williams Walsh LLP, of Chicago, for appellees. |